[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-15589
_____

D.C. Docket No. 4:10-cv-00149-HLM

CONNIE STRICKLAND,

Plaintiff - Appellant,

versus

NORFOLK SOUTHERN RAILWAY COMPANY,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(August 27, 2012)

Before JORDAN and FAY, Circuit Judges, and EDENFIELD,[*] District Judge.

_____

[*] Honorable B. Avant Edenfield, United States District Judge for the Southern District of
Georgia, sitting by designation.

FAY, Circuit Judge:

On July 23, 2009, Connie Strickland had been "working on the railroad / All the live-long day."[1] In fact, he claims he was working his customary twelve-hour shift when, towards the end of that shift, he suffered a massive shoulder injury as a result of a faulty handbrake. Strickland, however, could not identify the rail car on which the handbrake was installed. Nonetheless, he filed suit against his employer, Norfolk Southern Railway Company ("Norfolk Southern"), stating claims under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*,[2] and the Federal Safety Appliance Act ("FSAA"), 49 U.S.C. § 20301 *et seq.*[3] Subsequently,

---

[1] A popular American folk song, the first published version of "I've Been Working on the Railroad" seems to have been in a 1894 Princeton University songbook. *See* James J. Fuld, The Book of World-Famous Music 309 (Dover, 4th ed. 1996).

[2] During the late 1800s and early 1900s, the large number of serious and fatal injuries suffered by railroad employees was a growing cause for concern. In response, Congress enacted the FELA to provide a cause of action to those employees working in interstate commerce. Pursuant to the FELA, "[e]very common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier . . . ." 45 U.S.C. § 51.
"The FELA is meant to provide a broad remedial framework for railroad workers and, in light of that purpose, is to be liberally construed in their favor." *Lisek v. Norfolk & W. Ry. Co.*, 30 F.3d 823, 832 (7th Cir. 1994). The basis of FELA liability is negligence and, although what constitutes negligence for the statute's purpose is a federal question, this federal question turns on principles of common law. *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 543 (1994) (quotations and citations omitted).

[3] Although it does not provide a stand-alone cause of action, *Moses v. Union Pac. R.R.*, 64 F.3d 413, 418 (8th Cir. 1995) ("The FSAA[] . . . do[es] not create an independent cause of action for injured parties."), a violation of the FSAA may be asserted under the FELA. *Lisek*, 30

Norfolk Southern moved for summary judgment, contending that, in the absence of an identification of the rail car and the alleged faulty handbrake, there was insufficient evidence to constitute a genuine issue of material fact to prevent summary judgment in its favor. Norfolk Southern's motion implicitly relied upon the contention that Strickland's testimony was insufficient in and of itself to defeat summary judgment. Without addressing the sufficiency of Strickland's testimony, the district court granted summary judgment to Norfolk Southern.

On Strickland's appeal, we are faced with two issues. The first issue is whether the district court applied the proper standard in adjudicating Norfolk Southern's motion for summary judgment; the second is whether summary judgment was appropriate even if the district court applied the wrong standard. Finding both that the district court applied the wrong standard and that, even if it had applied the correct standard, summary judgment would have been improper, we reverse the district court's order and remand for proceedings consistent with

F.3d at 825. The FSAA directs that a railroad carrier may use, or allow to be used on any of its railroad lines, a vehicle only if it is equipped with the enumerated safety devices; relevant here is the requirement of ensuring that each vehicle contain efficient handbrakes. 49 U.S.C. § 20302(a)(1)(B).

Under the FSAA, the railroad's duty is absolute, thus an employee need only prove that the statute was violated and that harm resulted. *See Lisek*, 30 F.3d at 825. "In other words, a failure of equipment to perform as required by the [FSAA] is in itself an actionable wrong, in no way dependent upon negligence and for the proximate results of which there is liability-a liability that cannot be escaped by proof of care or diligence." *Id.* at 826 (quoting *O'Donnell v. Elgin, J. & E. Ry. Co.*, 338 U.S. 384, 390 (1949) (internal quotations omitted) (alteration in original)).

this opinion.

## I.

We review the district court's grant of summary judgment *de novo*, viewing all evidence and drawing all reasonable factual inferences in favor of the nonmoving party. *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc). Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id.* In other words, "[t]he District Court [must] consider all evidence in the record when reviewing a motion for summary judgment—pleadings, depositions, interrogatories, affidavits, etc.—and can only grant summary judgment if everything in the record demonstrates that no genuine issue of material fact exists." *Tippens v. Celotex Corp.*, 805 F.2d 949, 952 (11th Cir. 1992) (internal citation and quotation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, we may affirm the district court's judgment "on any ground that finds support in the record." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1256 (11th Cir. 2001) (internal quotation marks omitted).

## II.

The relevant facts of this case can fairly be condensed as follows: An experienced railroad worker for over 30 years, Strickland was employed by Norfolk Southern as a switchman. As a switchman, Strickland's duties required him to mount and climb rail cars, as well as lift, pull, and twist handbrakes once aboard those rail cars.[4] He was operating as a switchman on July 23, 2009. His work day began at 7:30 a.m. Towards the end of his shift, around 5:45 p.m., one rail car in particular—a tank car, although Strickland recalls no other characteristics—[5]gave Strickland a harder time than normal in releasing the handbrake. Strickland was on the car alone and saw that the handbrake appeared normal, without corrosion or any apparent mechanical failure. He attempted to disengage the quick release of the brake; it moved but the brake did not release. This was not "an out-of-the-blue thing." He therefore assumed the stance taught by Norfolk Southern and required for use of the second stage of the handbrake and

---

[4] A typical handbrake apparatus includes both a quick-release lever ("first stage") and a wheel ("second stage"), which can be turned to operate the braking system on a railcar. The quick-release lever is designed so that it will release the entirety of the chain that is engaging the brake beneath the rail car. Under normal operations, a switchman first seeks to use the first stage. If the first stage does not suffice, he then turns to the second stage. The second stage of the handbrake requires the switchman to rotate a wheel counterclockwise.

[5] Strickland, however, contended that it was possible for Norfolk Southern, by reference to a Switch List, to narrow down the possible number of rail cars that could have been involved.

attempted to turn the brake wheel using "reasonable effort."[6] It would not turn.

The failure of the handbrake wheel to turn was uncommon. It was only when he

exerted more force on a second attempt that Strickland felt the handbrake release.[7]

At different times, he described this effort as putting "a little bit more [steady]

pressure on it" and "a very high amount of effort" without changing his stance or

his grip. After turning the wheel, he felt a twinge in his shoulder. He continued to

work and completed his twelve-hour shift.[8] Afterwards, his shoulder felt sore,

which he may have mentioned in general conversation to his co-workers but did

not report to Norfolk Southern. However, when he got home, he mentioned to his

wife that his shoulder was sore and that he thought it was because of one particular

handbrake he had to release. Nonetheless, Strickland continued to go to work.

Soon after, Strickland began experiencing pain that he had never before

experienced in his shoulder. Strickland believed that the actions he took in

disengaging the handbrake in question caused his shoulder injury. Strickland

---

[6] According to Strickland, "the effort [he] used seemed reasonable to [him], but was almost certainly at the top end of what the average railroad worker would use to attempt to accomplish the same task."

[7] It is the amount of force exerted by Strickland which Norfolk Southern now relies upon in support of the district court's summary judgment order. It argues that Strickland expended excessive effort to effectuate the handbrake release, while Strickland counters that he "did not use excessive effort as [he] define[s] that term."

[8] In total, Strickland released between ten and twelve handbrakes that day. He reapplied about the same number, as well.

reported the incident to Norfolk Southern on August 3, 2009, almost two weeks after the accident occurred. Strickland then went to an urgent care facility, where the doctor took some x-rays and gave him some anti-inflammatory pills. He returned to the same doctor a week later, at which time the doctor told him an MRI was needed. Strickland was referred to an orthopedic surgeon, who ordered the MRI and eventually told him that his shoulder was "torn pretty bad" and that he had a "severed bicep tendon in [his] shoulder." The surgeon recommended surgery, which Strickland subsequently underwent.

On September 20, 2010, Strickland filed suit against Norfolk Southern. In his complaint, he alleged two counts: Count I alleged a claim under the FELA, claiming that Norfolk Southern was negligent in failing to provide Strickland with safe and adequate equipment, tools, assistance, and the like. Count II alleged a claim under the FELA and the FSAA, claiming that the "inefficiencies" of the handbrake in question caused his injury and that Norfolk Southern was liable.[9]

After the parties conducted discovery, Norfolk Southern moved for summary judgment, contending that "there [was] insufficient evidence to support [Strickland's] claims." In support of that contention, Norfolk Southern argued that

_____

[9] The FSAA uses "inefficiency" as a term of art to describe mechanisms that either do not function or do not function as intended by the manufacturer. *See Myers v. Reading Co.*, 331 U.S. 477, 483 (1947); *Spotts v. Baltimore & O.R. Co.*, 102 F.2d 160, 162 (7th Cir. 1938).

7

Strickland could not "advance[] evidence that the [handbrake] was defective"; that Norfolk Southern "had actual or constructive knowledge that the [handbrake] in question was defective"; or that Strickland's injuries arose from Norfolk Southern's negligence. Moreover, Norfolk Southern argued that, "because [it] had no way to defend itself" against Strickland's claims because he could not identify the particular rail car on which he was injured, Strickland's case had to be dismissed.[10]

Strickland opposed summary judgment, contending that his evidence—namely, his testimony and that of his treating physician—demonstrated Norfolk Southern's liability under the FELA and the FSAA. Noting that an employee may recover under the FELA if his employer's negligence "played any part, even the slightest, in producing the injury or death for which damages are sought," *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 506 (1957), Strickland argued that summary judgment is disfavored in FELA actions. *See generally CSX Transp., Inc. v. McBride*, 564 U.S. __, 131 S.Ct. 2630 (2011). Moreover, Strickland argued that the determining factor in his action was neither

---

[10] Strickland withdrew certain of his claims after Norfolk Southern filed its motion for summary judgment. Specifically, he withdrew his claims under Count I and instead proceeded "solely in reliance on [Norfolk Southern's] violation of the [FSAA] that requires efficient [handbrakes] and imposes strict liability for [Norfolk Southern's] failure to provide them." The district court considered Count I abandoned, and we need not review that determination at this time.

whether he could identify a "mechanical defect or broken part" in the handbrake at issue, nor whether he could identify the number of the car on which the handbrake was installed; instead, the issue was whether his testimony alone constituted sufficient evidence to survive summary judgment. He submitted a supporting affidavit in opposition to Norfolk Southern's motion for summary judgment.[11]

The district court granted summary judgment to Norfolk Southern. Although the court recognized the summary judgment standard and the "featherweight" burden of a FELA claim to withstand summary judgment, Dist. Ct. Order at 23 (quoting *Diamond Offshore Management Co. v. Horton*, 193 S.W.3d 76, 79 (Tex. App. 2006)), it nonetheless held that Strickland's failure to "identify with any certainty the rail car that allegedly had the defective [handbrake]," Dist. Ct. Order at 28-29, would result in "the Court and the parties [] only specula[ting] about which rail car contained the allegedly defective [handbrake]." *Id.* at 33. Citing two non-binding cases in support, *Tezak v. BNSF Railway. Co.*, No. C09-0512BHS, 2010 WL 3211693, *1 (W.D. Wash. Aug. 12,

---

[11] As pointed out by Norfolk Southern, Strickland's affidavit arguably differed from his earlier testimony in at least one respect. At his deposition, Strickland said that he had put "a little bit more pressure" on the wheel of the handbrake to get it to disengage after it failed to do so the first time. In his affidavit, Strickland testified that he had actually intended to say that he had applied "a very high amount of effort." Strickland, in his affidavit, explained any discrepancy in the two statements was due to his colloquial manner of speech. We will further discuss this apparent discrepancy in Section IIIB, *infra*.

9

2010), and *O'Neill v. BNSF Railway Co.*, No. A10-1987, 2011 WL 4008276 (Minn. Ct. App. Sept. 12, 2011), the district court held that such speculation could not demonstrate a genuine issue of material fact or satisfy the featherweight burden required under the FELA. Dist. Ct. Order at 27-34. Nowhere in its order did the district court directly address Strickland's testimony in support of his claims. *Id.* at 35 n.3.  Strickland appeals the district court's order.

### III.

As noted above, there are now two issues on appeal. The first issue relates to whether the district court applied the proper standard in granting summary judgment. The second issue requires us to consider whether, even if the proper standard had been applied by the district court, Strickland put forth sufficient evidence to survive summary judgment. We address each in turn.

### A.

Strickland contends that the summary judgment order must be reversed because the district court improperly based that order upon Strickland's failure to identify the rail car on which his injury occurred. The district court concluded that this failure left Norfolk Southern in an untenable defensive posture and therefore granted it summary judgment. Upon consideration of the district court's reasoning, we agree with Strickland that such a basis for summary judgment was improper.

10

The district court properly recited the controlling standards for summary judgment. It recognized that, to survive a motion for summary judgment, a plaintiff asserting a FELA claim must demonstrate that a question of fact exists concerning whether the employer's negligence played a part, however slight, in the employee's injuries. Dist. Ct. Order at 24 (citing *Rogers*, 352 U.S. at 505-07). The district court also noted that it "may not make credibility determinations, weigh conflicting evidence to resolve disputed factual issues, or assess the quality of the evidence presented." Dist. Ct. Order at 20.

However, despite recognizing the "liberal principles underlying the FSAA and its related relaxed burden of proof," the district court held that "allowing [Strickland's] FSAA claim to proceed to a jury on the basis of speculation would effectively convert [Norfolk Southern] into an insurer of all workplace injuries, and could create liability simply based on allegations, not actual evidence." Dist. Ct. Order at 33. Thus, the district court found that no question of fact could exist because Strickland "did not recall the particular car number, . . . [or whether] the car in question was being pulled or placed." *Id.* at 5.

The district court misconstrued the issue before it. Rather than considering the only question relevant to Norfolk Southern's motion for summary judgment, whether there was evidence of an inefficient handbrake, the court instead

11

considered whether Strickland's failure to identify the rail car was fatal to his claim. Such a consideration is improper in the context of a motion for summary judgment.

No authority exists for the proposition that the failure to identify the rail car, standing alone, provides a sufficient basis for summary judgment in Norfolk Southern's favor. While Strickland's failure to identify a specific rail car may hinder Norfolk Southern's defense, Norfolk Southern cited no authority, either in its brief or at oral argument, that would have supported the granting of a motion for summary judgment on such a basis. Nor were we able to locate any controlling or persuasive authority authorizing such action.

Neither of the cases cited by the district court, either *O'Neill* or *Tezak*, is applicable to the facts here.[12] In *O'Neill*, a railroad worker who was employed by the BNSF Railway Company ("BNSF") filed suit ten years after he stopped working in the physically demanding positions of brakeman and switchman. *O'Neill*, 2011 WL 4008276, at *1. At the time he brought suit, he was already a full-time yardmaster. *Id.* In his suit, he alleged that, as a result of repetitive activity

---

[12] Most obviously, neither of those cases is binding upon the district court nor us. *See Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 993 n.10 (11th Cir. 2012). More subtly, neither of those cases were decided on a similar factual basis, as we will discuss, *infra*. Even if they were, we would still find that they were contrary to the stated purposes of the FELA and the FSAA.

in an unsafe environment over a period of 25 years, he suffered cumulative physical dysfunction and impairment of his upper body, shoulders, and torso. *Id.* At trial, the judge granted BNSF a directed verdict as to the FSAA claim and allowed his FELA claim to go to the jury. *Id.* at *3. The jury found that both parties were negligent but that neither party's negligence was directly responsible for the alleged shoulder injuries and awarded O'Neill damages for past and future pain and suffering, medical expenses, and lost wages. *Id.* O'Neill appealed the directed verdict granted in BNSF's favor on the FSAA claim.  The Minnesota Appeals Court affirmed the directed verdict, finding that O'Neill could not establish causation due to the fact that the injuries he alleged were too far removed from his employment as a brakeman and switchman. *Id.* at *8.

*O'Neill* is distinguishable on two important grounds. First, O'Neill's case survived summary judgment. Although the court granted BNSF's motion for directed verdict as to the FSAA claim, *id.* at *3, his FELA claim was submitted to a jury. Second, his allegations were based on the cumulative effects he endured from a lifetime of working as a railroad worker. *Id.* at *1. Unlike Strickland, O'Neill was seeking to make BNSF an insurer of all workplace injuries.  *Cf. Inman v. Balt. & Oh. R.R. Co.*, 361 U.S. 138, 140 (1959) (holding the FELA is not intended to make railroad corporations insurers of their employees). He could not

13

point to documentation showing that he had ever complained about any of the equipment that allegedly caused his injuries; nor did he ever notice or report any pain in his shoulder until 2005. *O'Neill*, 2011 WL 4008276, at *2. He also never alleged that he suffered one specific injury or that BNSF failed to comply with any of the statutory requirements to make working on a railroad a safe environment. *Id.* at *4.

Here, Strickland was not given the opportunity to go to trial or present his case to a jury. Instead, the district court acted as the trier of fact and determined that his claims lacked merit.  More importantly, unlike O'Neill, Strickland does not seek broad redress for the side effects of working as a switchman; instead, he alleges he suffered a specific injury as a result of Norfolk Southern's failure to comply with the specific statutory requirement to provide efficient handbrakes. *Id.* at *2. For these reasons, *O'Neill* does not support the district court's determination.

For similar reasons, neither does *Tezak*. In *Tezak*, the railroad worker, like O'Neill, alleged that he suffered disabling injuries as a result of cumulative trauma stemming from required activities during his employment by BNSF. *Tezak*, 2010 WL 3211693, at *1. Tezak alleged that he "encountered" defective handbrakes and defective pin lifters over the course of his employment. *Id.* He failed,

14

however, to identify in what ways those devices violated the FSAA. The trial court granted summary judgment to BNSF because Tezak could not point to any particular injury-causing event or any particular defective device on any particular in-use rail car. *Id.* at *2.

In the facts before us, Strickland makes the specific allegations lacking in *O'Neill* and *Tezak*: he provides allegations about a specific injury-causing event, identifies a specific date, and narrows the number of railcars which could have contained the defective handbrake. Strickland, unlike the plaintiffs in *Tezak* and *O'Neill*, does not seek redress for cumulative trauma suffered throughout his employment. The claim he brings is precisely what the FELA was meant to remedy. *See Atchison, Topeka, & Sante Fe Ry. Co. v. Buell*, 480 U.S. 557, 561 (1987) ("Congress enacted the FELA to provide a federal remedy for railroad workers who suffer personal injuries as a result of the negligence of their employer . . . .").

Considering these differences, the legislative purpose behind the FELA and the FSAA also weighs against summary judgment for Norfolk Southern. As the Supreme Court noted in *McBride*, the FELA was enacted to counteract the "harsh and technical" rules of state common law. *McBride*, 564 U.S. at __, 131 S.Ct. at 2638 (internal quotation omitted). Permitting summary judgment to Norfolk

15

Southern would fly in the face of that forgiving standard. *See also Rogers*, 352 U.S. at 509 ("Congress . . . removed the fetters which hobbled the full play of the basic congressional intention to leave to the fact-finding function of the jury the decision of the primary question raised in [FELA] cases-whether employer fault played any part in the employee's mishap."). Although the FELA does not and was never intended to convert railroad employers into insurers, *Ellis v. Union Pacific Railroad Co.*, 329 U.S. 649, 653 (1947), it certainly was intended to protect and compensate those employees who were injured in the line of duty by deficient or defective equipment.

Like the *Rogers* Court, we are "[c]ognizant of [our] duty to effectuate the intention of the Congress to secure the right to a jury determination." *Rogers*, 352 U.S. at 509. Imposing a judge-made rule to grant summary judgment because a plaintiff is unable to identify the rail car on which his injury takes place is contrary to such an intent.

**B.**

Next, we consider the second issue of whether, even if the district court had applied the proper standard, summary judgment for Norfolk Southern would still have been appropriate. This issue hinges upon the sufficiency of Strickland's testimony to defeat the motion for summary judgment.

16

Norfolk Southern contends that, even if the district court's order cannot be upheld on its own reasoning, it should nonetheless be affirmed on alternative grounds. Specifically, even though the district court order made no explicit mention of the sufficiency of Strickland's testimony,[13] Norfolk Southern urges us to find that Strickland's deposition testimony is insufficient, standing alone, to demonstrate a genuine issue of material fact. Even were that not the case, Norfolk Southern argues, Strickland's deposition testimony materially differs from the affidavit he submitted to the district court, which demonstrates the impropriety of relying on his testimony as the sole basis for his claim. Under either argument, Norfolk Southern contends that summary judgment was properly entered on its behalf.

We need not spend much time discussing Norfolk Southern's first contention. Effectively, Norfolk Southern argues that some evidence is more compelling than other evidence. Our case law makes no such distinction; nor do the Federal Rules of Evidence assign different weight to different types of

---

[13] Upon review of the district court's failure to recognize Strickland's testimonial evidence, we are left with only one conclusion: that the district court engaged in exactly the type of weighing that it itself recognized as improper. The district court's 35-page order failed to explain why, even in the face of Strickland's testimony, there were no genuine issues of material fact that would require a fact-finder. Instead, the district court discredited and disregarded Strickland's testimony, concluding that it constituted "allegations, not actual evidence." Dist. Ct. Order at 33. This distinction is flawed and is not supported by our case law.

17

evidence. Fed. R. Evid. 402 ("Relevant evidence is admissible . . . ."). While some testimony may be subject to credibility determinations, such credibility determinations are for the fact finder, which in this case is the jury. *Anderson*, 477 U.S. at 255. Our case law recognizes that, even in the absence of corroborative evidence, a plaintiff's own testimony may be sufficient to withstand summary judgment. *See Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893-94 (5th Cir. 1980) (holding that plaintiff's deposition testimony, even in the context of a possibly contradictory subsequent affidavit, was sufficient to survive defendant's summary judgment motion).[14] Employing the district court's reasoning, without more, would result in summary judgment in a defendant's favor on every occasion where the plaintiff cannot point to supporting extrinsic evidence. Such a result was neither intended by Congress in passing the FELA and the FSAA, nor by this Circuit in its application of standards for summary judgment.

Norfolk Southern's second contention demands more attention. As discussed above, *supra*, Norfolk Southern disputes the force of Strickland's testimony in light of apparent contradictions in its substance. The most apparent contradiction relates to the level of force exerted by Strickland in disengaging the

---

[14] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted all Fifth Circuit case law decided prior to October 1, 1981.

18

handbrake through the use of the handbrake wheel. In his deposition taken on March 9, 2011, Strickland testified that he applied "normal" and "reasonable" force to the wheel in an effort to disengage the handbrake. Later, after Norfolk Southern filed its motion for summary judgment, Strickland submitted an affidavit on October 11, 2011, modifying that earlier statement.[15] In the affidavit, he states that his efforts were greater than normal and were "beyond the usual and reasonable force that should have been necessary to release that [handbrake]."[16] Norfolk Southern now argues that these statements cannot co-exist and that, there being no reliable testimony regarding the cause of Strickland's injury, summary judgment is proper.

We find *Rollins v. TechSouth, Inc.*, 833 F.2d 1525 (11th Cir. 1987), although decided in a different context, persuasive. In *Rollins*, a woman sued her former employer for age and sex discrimination. At her deposition, she had testified regarding numerous age-biased statements that she claimed her co-workers had made. *Rollins*, 833 F.2d at 1530. Nonetheless, the district court granted summary judgment in her employer's favor, finding that those statements,

---

[15] Indeed, therein Strickland stated that he "believe[d] that [his] deposition testimony has been taken out of context" and that the "meanings [Norfolk Southern] attached to [his] deposition testimony are not consistent with what [he] intended to communicate."

[16] This difference is an important one, as Norfolk Southern argues that, if the level of force used was "normal," it cannot be held liable as a matter of law.

which were the bulk of Rollins' evidence, were insufficient to raise an inference under the *McDonnell Douglas* standard employed in the context of discrimination cases.[17] This decision was predicated, in part, on the fact that an affidavit later submitted by Rollins could have been interpreted as conflicting with her prior deposition testimony, and in certain limited circumstances, such an affidavit could be disregarded as a sham. *Id.* at 1530 (citing *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 658-59 (11th Cir. 1984)).

On review, we held that Rollins' testimony was sufficient to demonstrate a genuine issue of material fact. *Id.* at 1530-31. After considering Rollins' deposition testimony in conjunction with her subsequent affidavit, we stated that "[w]e do not believe that Rollins' affidavit so completely contradicts her deposition as to warrant its exclusion." *Id.* at 1531. Instead, her affidavit merely elaborated upon an area of inquiry that had not been raised at deposition. *Id.* In finding otherwise and "evaluating the quality of" Rollins' evidence, the district court had "strayed from its proper role and made credibility determinations." *Id.* at 1531. Such credibility determinations, based upon the district court's decision to weigh the competing evidence, should have demanded that the defendant's motion

---

[17] Of course, the district court was referring to the burden-shifting framework enunciated by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

20

for summary judgment be denied. *Id.*

Our reasoning in *Rollins* is no less appropriate here. Without any doubt, Strickland's deposition testimony may be read to contradict his sworn affidavit, particularly as it pertains to the level of force he used to disengage the wheel of the handbrake in question. If there were no way that Strickland's statements could be read together, perhaps Norfolk Southern would be correct and Strickland's affidavit could be disregard as a sham. *See Van T. Junkins & Assocs., Inc.*, 736 F.2d at 657 (noting that, under sham affidavit concept, "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."). However, we do not believe that Strickland's deposition and affidavit are necessarily so directly contrary to one another that a determination as a matter of law may be made. *Accord Bone*, 622 F.2d at 893-95 (holding, in similar context, that summary judgment was improper). Instead, as Strickland points out in his affidavit, it is possible that the apparent contradiction derives not from purposeful fabrication but instead from dialectical misunderstanding. Under such circumstances, any apparent contradiction becomes "an issue of credibility or go[es] to the weight of the evidence." *Tippens*, 805 F.2d at 953.

21

Where a fact-finder is required to weigh a deponent's credibility, summary judgment is simply improper. *Accord Rollins*, 833 F.2d at 1531-32. Summary judgment operates as a judicial safety-valve, permitting the court to decide a case as a matter of law only where there are no genuine issues of material fact that are relevant to the parties' dispute; it does not permit, however, the court to make a final determination where such genuine issues of material fact exist. *Id.* Here, even given the potential conflict between Strickland's deposition testimony and his affidavit, we have no doubt that the "featherweight" standards of a FELA action are satisfied. It is for a jury to make the necessary credibility determinations.

## IV.

Accordingly, having reviewed the record and entertained oral argument, we **REVERSE** the district court's order granting summary judgment to Norfolk Southern and **REMAND** for proceedings consistent with this opinion.