[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 13-15089

————————————————

D.C. Docket No. 1:12-cv-21118-KMM

HTC LELEU FAMILY TRUST,

Plaintiff-Appellant,

versus

PIPER AIRCRAFT, INC.,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

(July 3, 2014)

Before MARCUS and ANDERSON, Circuit Judges, and TREADWELL,[*] District
Judge.

---

[*] Honorable Marc T. Treadwell, United States District Judge for the Middle District of Georgia,
sitting by designation.

PER CURIAM:

Appellant HTC Leleu Family Trust ("HTC") appeals the district court's entry of summary judgment in favor of appellee Piper Aircraft, Inc. ("Piper") on its claims arising out of a defective aircraft manufactured by Piper. On appeal, HTC argues the district court erred by finding: (1) Piper was not the seller of the aircraft; (2) the aircraft was subject to a limited warranty, which HTC breached by refusing Piper the opportunity to cure; and (3) HTC's tort claims were barred by both the failure to establish reliance and Florida's economic loss rule. After thorough review and the benefit of oral argument, we affirm.

I.

Viewed in the light most favorable to the non-moving party, the essential facts are these. During April 2008, HTC, a family trust established under the laws of South Africa, contacted Placo (Pty) Ltd. ("Placo"), a South African-based authorized dealer of Piper aircraft, to discuss the purchase of a new Piper Meridian aircraft with serial number 4697387 (the "387 Aircraft"). On April 28, 2008, HTC and Placo executed a purchase agreement for the 387 Aircraft with a purchase price of $2.1 million (the "Purchase Agreement"), which stated it was subject to a limited warranty provided by Piper (the "Limited Warranty"). Piper was not a party to the Purchase Agreement nor was it involved in the negotiations for the sale of the 387 Aircraft.

2

Shortly after the execution of the Purchase Agreement, HTC contacted Placo to request an aircraft with an earlier delivery date. Placo contacted Piper, and Piper made arrangements to secure a Piper Meridian with serial number 4697384 (the "384 Aircraft"), which could be delivered earlier. The 387 Aircraft and 384 Aircraft are identical, and the purchase price was the same for each aircraft. Piper then sold the 384 Aircraft to Placo through a purchase agreement.

In November 2008, Herwig Leleu, one of HTC's trustees, traveled from South Africa to Piper's manufacturing facility in Vero Beach, Florida to inspect the 384 Aircraft and attend a Piper training course. Leleu was assured that any problems with the 384 Aircraft had been corrected and it was ready for delivery. Placo arranged for a third party to ferry the 384 Aircraft from Florida to South Africa, and it arrived in South Africa on December 17, 2008. HTC took possession of the 384 Aircraft and executed the Limited Warranty the same day.

In January 2009, HTC notified Placo that the 384 Aircraft had developed a fuel leak in the right header tank. After several preliminary inspections by other technicians, Piper offered to send a fuel tank repair technician to South Africa to perform the repairs. Piper also offered to extend the warranty on the 384 Aircraft for an additional two years from the date of the repair. Because Leleu believed Piper would not provide a lifetime guarantee for any attempted repair, HTC rejected Piper's proposed repairs and demanded a new aircraft instead. HTC left

3

the 384 Aircraft unrepaired and eventually sold it "as is" to a third party in August 2012 for $1,050,000.[1]

Alleging that it ended up contracting with Piper rather than Placo, HTC brought suit against Piper.[2]  In addition to claims arising from breach of the alleged contract, it asserted various tort and breach of warranty claims.

The district court granted Piper's motion for summary judgment.  First, the district court found Placo, not Piper, was the seller of the 384 Aircraft.  Because the record demonstrated that HTC and Piper did not negotiate any of the essential elements of a contract, the district court concluded HTC and Piper did not enter into an oral contract for the 384 Aircraft, and instead, "[t]he logical explanation is that the Purchase Agreement for the 387 Aircraft was extended to be applicable to the [384] Aircraft."  Second, the district court held that HTC's breach of an implied warranty claim failed because no contractual privity existed between HTC and Piper.  After determining that HTC was bound by the Limited Warranty, the district court found Piper was not liable pursuant to the Limited Warranty because HTC refused Piper the opportunity to cure any deficiency.  Finally, the district court concluded HTC's pre-contractual tort claims failed because, having already purchased the 384 Aircraft from Placo, HTC could not show reliance on any

---

[1] According to Piper, that purchaser repaired the leak at "minimal cost" and flew the plane to San Diego without incident.

[2] Before filing this action, however, HTC filed suit in South Africa against Placo and Piper, contending Placo was the seller and Piper was the manufacturer.

4

statements made during Leleu's visit to Piper's facility in Vero Beach.  Further, the district court held that HTC's alternative tort claims were actually products liability claims, and they were barred by Florida's economic loss rule.

## II.

We review a district court's order granting summary judgment de novo, applying the same standard as the district court.  Nat'l Parks Conservation Ass'n v. Norton, 324 F.3d 1229, 1236 (11th Cir. 2003).  Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In assessing whether this standard is met, we must view the evidence and draw all reasonable factual inferences in favor of the nonmoving party.  Strickland v. Norfolk S. Ry. Co., 692 F.3d 1151, 1154 (11th Cir. 2012).  There is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  Put differently, the movant is entitled to judgment as a matter of law where "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).[3]

---

[3] The Parties assume Florida law governs, and the Court sees no reason to quarrel with that.

III.

A.

The viability of most of HTC's claims turns on whether Piper, the manufacturer, or Placo, the dealer, was the seller of the 384 Aircraft. HTC argues the Purchase Agreement was rendered null and void when HTC selected a different aircraft because the Purchase Agreement prohibited oral modifications, and no written modification was ever executed.[4] Instead, HTC argues, it entered into an oral contract for the 384 Aircraft with Piper when Leleu visited Piper's facility in Florida.

HTC's arguments fail for several reasons. First, the mere presence of a clause prohibiting oral modifications in the Placo Purchase Agreement does not logically lead to the conclusion that HTC orally contracted with Piper. A clause prohibiting oral modifications does not necessarily preclude parties to a contract from modifying it orally. "At common law, an oral agreement is sufficient to modify or rescind a written contract notwithstanding a provision in the written contract purporting to require that subsequent modifications be evidenced by a writing, commonly called a 'no oral modification' clause[.]" 10 Williston on

---

[4] In its statement of facts, HTC states that the Purchase Agreement with Placo never became effective because it was not approved by Piper, as required by the Purchase Agreement's terms. However, HTC does not address this contention in its argument, and regardless, this is flatly contradicted by the record. HTC attempted to cancel its contract for the sale of the 384 Aircraft by contacting Placo to cancel the "Purchase Agreement concluded between [HTC] and your Company on 23 April 2008."

Contracts § 29:42 (4th ed.).  Further, "when, following the oral modification, one of the parties materially changes position in reliance on the oral modification, the courts are in general agreement that the other party will be held to have waived or be estopped from asserting the no‑oral‑modification clause."  Id. § 29:43.  Certainly, when there has been full performance of the modified contract by one of the parties, the other party may not use the no oral modification clause as a defense.  Id.  Second, there is substantial evidence of written modification of the Purchase Agreement.  Piper identifies emails between HTC and Placo memorializing HTC's request for the 384 Aircraft.

But even assuming there was not a successful modification of the Purchase Agreement, that in no way establishes the creation of a contract between HTC and Piper.  To prove the existence of a contract under Florida law, a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms.  Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1272 (11th Cir. 2009) (citing St. Joe Corp. v. McIver, 875 So. 2d 375, 381 (Fla. 2004)).  The same requirements apply to oral contracts.  McIver, 875 So. 2d at 381.  HTC claims the oral contract was formed pursuant to Article 2 of the Florida Uniform Commercial Code, but regardless, the fundamentals of contract formation must be established.

7

The district court considered whether these requirements were present to support the existence of a contract between HTC and Piper and properly concluded they were not.  The essential terms of the sale were negotiated and finalized between HTC and Placo, and the only changes made to the terms of the Purchase Agreement were the serial number and expected delivery date of the aircraft, which occurred prior to Leleu's visit to Piper's facility.  Moreover, in July 2008, Piper sold the 384 Aircraft to Placo pursuant to a purchase agreement between Piper and Placo.  And HTC had made all the payments it owed for the aircraft, except for the commission owed to Placo, by October 2008, about a month before Leleu's visit to the Piper facility.

Further, HTC has cited no evidence in the record that raises a genuine issue regarding HTC's and Piper's mutual assent to enter into a contract.  HTC merely argues, without support from the record, that it and Piper comported themselves as parties to a contract.  To establish the formation of a contract under Florida law, courts do not consider the subjective intentions of the parties but instead look for mutuality of assent.  See Gira v. Wolfe, 115 So. 3d 414, 417 (Fla. Dist. Ct. App. 2013) (citation and internal quotation marks omitted) ("The making of a contract depends not on the agreement of two minds in one intention but on the agreement of two sets of external signs.").  Assent must be outwardly and objectively manifested and is usually evidenced by an offer and acceptance.  1 Williston on

Contracts § 3:4 (4th ed.).  No statements or objectively manifested conduct occurred during the course of Leleu's visit to Piper's facility that would support a finding of mutual assent between HTC and Piper.  The fact that Leleu may have subjectively believed he was contracting or intended to contract with Piper is irrelevant to this determination.  Because there is no evidence of an oral contract between HTC and Piper, HTC's claims for breach of contract and rescission must fail.

B.

HTC argues that the district court erred in dismissing its breach of express warranty claims for three reasons:[5] (1) the Limited Warranty never became part of the contract for the 384 Aircraft; (2) even if the sale of the 384 Aircraft was subject to the terms of the Limited Warranty, HTC is not limited to repair or replacement because fuel leaks developed before the warranty period; and (3) the limitation of remedy failed of its essential purpose.

The district court's discussion of HTC's breach of express warranty claims is somewhat cryptic but is easily explained.  In Count Five of its amended complaint, HTC alleged that Piper somehow created oral express warranties

---

[5] HTC does not appear to raise any arguments regarding its claim for breach of an implied warranty of merchantability.  Thus, the Court will consider that claim abandoned on appeal. Even if HTC argued that claim on appeal, it would fail because a plaintiff must show contractual privity to sustain a claim for breach of the implied warranty of merchantability under Florida law.  See Freeman v. Olin Corp., 2012 WL 1987019, at *1 (N.D. Fla. May 3, 2012).

9

regardless of whether the underlying contract was with Placo or Piper.  In the district court, Piper contended HTC's breach of express warranty claims failed because HTC did not give Piper an opportunity to cure the alleged defect.[6]  The district court first found that "HTC agreed to be bound by the [limited] warranty." The district court then found Piper was not liable under the Limited Warranty because HTC refused to allow Piper to cure the defect.  This latter finding was probably unnecessary because HTC never asserted a claim under the Limited Warranty; rather, it argued the Limited Warranty never became effective and thus did not bar its express warranty claims.  It is clear, however, the district court found that because the Limited Warranty became effective, HTC's only available express warranty claim was for breach of the Limited Warranty, which limited HTC's remedy to repair or replacement at Piper's option.

The district court was correct in finding the 384 Aircraft was subject to the Limited Warranty, and thus the Limited Warranty effectively limited HTC's express warranty claims.  The Purchase Agreement clearly stated that all new aircraft were covered by the Limited Warranty, and Leleu executed the Limited Warranty when he took possession of the 384 Aircraft.  Given that the Limited Warranty was effective, the only possible express warranty claim HTC could have

---

[6] Piper apparently argued that a plaintiff was required to give a warrantor the opportunity to repair before the plaintiff could bring a breach claim for *any* express warranty.  Clearly, not all express warranties provide the warrantor with the right to repair, and thus, all express warranties are not negated by a failure to allow repair.

asserted was for breach of the Limited Warranty.  However, that claim was not asserted in its amended complaint, and thus, HTC's remaining arguments regarding the Limited Warranty are irrelevant.

## C.

HTC pled fraud claims in the alternative to its rescission claims in the event the district court found it was not in contractual privity with Piper.  Having found HTC purchased the 384 Aircraft prior to Leleu's visit to Piper's facility and HTC and Piper were not in contractual privity, the district court dismissed these claims on the grounds that HTC could not show injury or reliance because the alleged misrepresentations occurred after its purchase of the 384 Aircraft.  Citing no authority, HTC now argues that the district court erred in dismissing these claims because, even in the absence of contractual privity with Piper, HTC can still show it was harmed by the alleged misrepresentations in its acceptance of a defective aircraft.

The Court agrees that HTC could not show reliance on any statements made by Piper during Leleu's visit to its facility because HTC had already purchased the 384 Aircraft from Placo.  Thus, the district court properly concluded Piper was entitled to summary judgment on these claims as well.

**AFFIRMED.**

11