[DO NOT PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 20-13244

Non-Argument Calendar

_____

DEXTER CONRAD JACKSON,

Plaintiff-Appellant,

versus

OFFICER WINFIELD,
ESOHE IDUSUYI,
MICHAEL AGYERI,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:18-cv-02086-SCJ

_____

Before ROSENBAUM, JILL PRYOR, and GRANT, Circuit Judges.

PER CURIAM:

Dexter Jackson appeals the district court's grant of summary judgment to Michael Agyeri on his 42 U.S.C. § 1983 claim that Agyeri, while working as a physician assistant at the Fulton County Jail, acted with deliberate indifference to his serious medical needs, in violation of the Fourteenth Amendment. Because the evidence does not support a finding that Agyei recklessly disregarded a substantial risk of serious harm to Jackson, we affirm.

I.

On May 25, 2016, while present for a hearing at the Fulton County Courthouse, Jackson was struck in the back of the head and knocked unconscious by a jail officer after he asked to use the restroom.[1] When he came to, his head was "spinning" and an EMT was taking his vitals.

_____

[1] Except where noted, we present the evidence in the light most favorable to Jackson, the nonmoving party at summary judgment. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009).

Later that day at the Fulton County Jail, Jackson began vomiting and was taken to see Agyei at the medical clinic at approximately 1:30 a.m.  Jackson testified that he told Agyei he had been hit in the back of the head, he was in pain and his head was spinning, and he could not stop vomiting.  Agyei did a cursory examination of Jackson's head and said he did not see any cuts or bruises.  When Jackson mentioned he was "hit by an officer," Agyei "cut everything short and just sent [him] back to [his] cell" without providing any pain or nausea medication.

Approximately 12 hours later, Jackson was brought back to the jail's medical clinic due to persistent dizziness and vomiting.  A nurse practitioner examined him and then ordered transport to Grady Hospital.  A CT scan showed a small focus of scalp swelling in the left back of Jackson's head.  He was diagnosed with blunt head injury and dizziness and possibly benign positional vertigo.  Jackson returned to the jail and was prescribed pain and nausea medication as needed.

Agyei's testimony differed from Jackson's in several respects.  Agyei testified that Jackson complained of headache, dizziness, and nausea, but not of vomiting.  Agyei also stated that he conducted a thorough physical examination of Jackson, including his head, lungs, heart, eyes, reflexes, and neurologic functions, which were normal.  He then ordered to have Jackson housed in the infirmary clinic until the morning for observation by nurses.  He did not have any further involvement in treating Jackson.

Agyei explained that he did not order pain or nausea medication because, in his medical judgment, "giving a patient with a head injury these medications can mask the symptoms" and make it more difficult to accurately assess the severity of the patient's condition. In Agyei's view, it is better to observe the patient for up to 48 hours, without medication, to "make sure the patient is not getting progressively worse."

## II.

Jackson initiated this lawsuit *pro se* in May 2018 against three defendants: (a) Agyei; (b) the officer who allegedly assaulted him; and (c) another member of the jail's medical staff who treated Jackson about two months after Agyei. Counsel appeared on Jackson's behalf in September 2018 and filed an amended complaint. This appeal concerns Jackson's claim against Agyei only.

Jackson alleged that Agyei acted with deliberate indifference to his medical needs when he conducted a cursory examination and sent Jackson back to his cell after learning that Jackson had been hit by another officer. As a result of Agyei's actions, the complaint alleged, Jackson was left to suffer unnecessarily for 29 hours before being sent to the hospital.

Agyei filed a motion for summary judgment supported by expert testimony, among other evidence, which a magistrate judge recommended granting in a report and recommendation (R&R). The magistrate judge found that the "only facts in dispute relate to what symptoms [Jackson] reported to [Agyei], and the nature of

[Agyei's] examination of [Jackson]." But it was "undisputed," in the magistrate judge's view, "that even though Agyei did not send [Jackson] to the hospital he kept him for observation to see if his symptoms worsened." As a result, according to the magistrate judge, Jackson's claim that Agyei should have immediately sent him to the hospital or prescribed pain and nausea medication "simply amount[ed] to a disagreement with the course of treatment and/or a dispute with [Agyei's] medical judgment, which are not actionable under § 1983."

Jackson submitted objections to the R&R, broadly arguing that the magistrate judge erred by resolving disputed factual issues and by giving controlling weight to the expert's testimony. He maintained that the denial of pain medication can constitute deliberate indifference even if it causes no lasting harm, and that Agyei made no attempt to treat Jackson's vomiting because he denied knowing about it. Notably, Jackson did not object to the magistrate judge's finding that Agyei kept Jackson in observation after examining him. Indeed, he had admitted that fact in response to Agyei's statement of undisputed facts.

The district court overruled Jackson's objections and adopted the R&R's resolution of the deliberate indifference claim against Agyei. The court noted that Jackson admitted "that Agyei kept [Jackson] in the infirmary overnight for observation." It also cited Agyei's testimony that "he did not prescribe medication for [Jackson's] headache and nausea because, in Agyei's judgment, it would have been more difficult to accurately assess the severity of

6                    Opinion of the Court                    20-13244

[Jackson's] condition, as sometimes medication can mask some of the symptoms of a head injury." The court therefore found that Agyei made judgments based on medical considerations, and that, whether those judgments were sound or not, the record lacked evidence that he declined to provide medical care he knew Jackson needed. This appeal followed.

## III.

We review the grant of summary judgment *de novo*, viewing the facts in the light most favorable to Jackson, the nonmoving party. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009). To defeat a summary-judgment motion, the plaintiff must show that there is sufficient evidence for a reasonable jury to return a verdict in his favor. *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*); *see* Fed. R. Civ. P. 56(a). In resolving a summary-judgment motion, courts may not weigh the evidence or make credibility determinations.[2] *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

---

[2] Jackson claims that the district court improperly weighed the evidence at summary judgment, citing the court's comment that "the great weight of the evidence indicates that Plaintiff's medical treatment was appropriate under the circumstances." Any error in that regard is harmless, though, because "on *de novo* review of a summary judgment ruling, we may not only affirm on any ground supported by the record, but may also choose to disregard a district court's determination of the facts for summary judgment purposes and determine those facts ourselves." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 n.5 (11th Cir. 2013) (citation omitted). We have conducted our own

## A.

Because it appears Jackson was a detainee, not a prisoner, his claim is governed by the Due Process Clause of the Fourteenth Amendment. *Jackson v. West*, 787 F.3d 1345, 1352 (11th Cir. 2015). Nevertheless, the minimum standard allowed by the Due Process Clause for pretrial detainees is the same as that allowed by the Eighth Amendment for prisoners. *Id.* Our analysis therefore relies on some Eighth Amendment precedent.

It is well established that individuals in custody have the "right to receive medical treatment for illness and injuries." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1115 (11th Cir. 2005). A detainee can establish a violation of this right by showing that a jail official displayed "deliberate indifference" to his serious medical needs. *Id.*

A deliberate-indifference claim has both an objective component and a subjective component. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). The claim requires an objectively "serious medical need." *Id.* (quotation marks omitted). Agyei concedes that Jackson's head injury and resulting nausea, vomiting, and pain, were objectively serious medical needs.

The plaintiff also must "show the prison official's: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk;

---

review of the record and independently conclude that summary judgment was appropriate.

and (3) by conduct that is more than mere negligence." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (quotation marks omitted); *see Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (explaining that the standard of deliberate indifference is consistent with recklessness in the criminal law). "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." *Bingham*, 654 F.3d at 1176.

Not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). "Mere incidents of negligence or malpractice do not rise to the level of constitutional violations," and a "simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [fails to] support a claim of cruel and unusual punishment." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *see Swain v. Junior*, 961 F.3d 1276, 1288 (11th Cir. 2020) ("Deliberate indifference is *not* a constitutionalized version of common-law negligence."). Deliberate indifference is "the equivalent of recklessly disregarding a substantial risk of serious harm to the inmate." *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (quotation marks omitted).

## B.

Here, no reasonable jury could conclude that Agyei was deliberately indifferent to Jackson's serious medical needs. In the

light most favorable to Agyei, the evidence shows that Jackson presented to Agyei at approximately 1:30 a.m. complaining of a headache, nausea, and vomiting due to being hit in the back of the head by a jail officer. Agyei briefly examined Jackson's head and did not see any cuts or bruises. There is no evidence that Agyei missed an obvious wound. Agyei then ordered that Jackson be housed in the infirmary clinic overnight until 8 or 9 a.m. for observation.

That Agyei did not refer Jackson for further evaluation or prescribe medication for pain and nausea at that time does not show that he acted with deliberate indifference. As the district court observed, Agyei testified that "he did not prescribe medication for [Jackson's] headache and nausea because, in Agyei's judgment, it would have been more difficult to accurately assess the severity of [Jackson's] condition, as sometimes medication can mask some of the symptoms of a head injury." Jackson does not offer any evidence to contradict that explanation, which is based on medical considerations. And "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [fails to] support a claim of cruel and unusual punishment." *Harris*, 941 F.2d at 1505.

Nor would it be reasonable for a jury to infer that Agyei recklessly disregarded Jackson's pain and suffering, given that it is undisputed he ordered Jackson to be kept under observation

through the morning.[3]  That a nurse practitioner faced with similar symptoms at a later time sent Jackson to the hospital does not establish deliberate indifference by Agyei.  *See Waldrop v. Evans*, 871 F.3d 1030, 1033 (11th Cir. 1989) (stating that a "simple difference in medical opinion" does not constitute deliberate indifference).

We also do not find it material to the outcome whether Jackson informed Agyei of, or whether Agyei otherwise knew about, Jackson's vomiting symptoms.  Jackson claims that Agyei "could not have made a medical decision—or any decision—about whether or how to treat the vomiting."  But Agyei's testimony about not providing medication in the early stages of a head injury was not specific to certain symptoms, but rather related to head injuries generally.  *See* Agyei Dep. at 28 ("If I have a patient who presents to me with nausea, vomiting, headache, for the first time, giving the patient medication can mask the symptoms. So, I'd rather keep the patient, observe him to make sure he's okay.").  So it does not appear that Agyei's knowledge of the vomiting would have affected his decisions regarding Jackson's care.  In any case, that Agyei may have failed to consider Jackson's vomiting symptoms sounds in negligence, not deliberate indifference.  It bears

---

[3] We note that, at his deposition, Jackson denied being placed in observation. Yet despite that denial, he admitted being placed in observation in response to Agyei's summary-judgment motion, he did not object to the magistrate judge's statement that it was undisputed Agyei "kept [Jackson] for observation to see if his symptoms worsened," and he does not raise this issue on appeal. Any challenge on this point has been waived or abandoned.

repeating that "[d]eliberate indifference is *not* a constitutionalized version of common-law negligence." *Swain*, 961 F.3d at 1288.

For these reasons, Jackson has not demonstrated a genuine issue of material fact as to whether Agyei was deliberatively indifferent to a substantial risk of serious harm to Jackson. We therefore affirm the district court's grant of summary judgment.

**AFFIRMED.**