[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14058
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-23285-FAM


TRUDY MIGHTY,
as personal representative of the
Estate of David N. Alexis, deceased,

                                                        Plaintiff - Appellee,

versus

MIAMI-DADE COUNTY
a Political subdivision of the State of Florida, et al.,

                                                        Defendants,

MIGUEL CARBALLOSA,

                                                        Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 10, 2016)

Before HULL, MARCUS, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Plaintiff Trudy Mighty, as personal representative of her son's estate, sues Defendant Miguel Carballosa, alleging federal and state-law claims arising out of the shooting death of her son. Defendant appeals the district court's denial of his motion to dismiss. After careful review, we affirm in part and dismiss in part.

## I.    Background

On the evening of October 2, 2012, 26-year-old David Alexis left work at North Shore Hospital to return to his parents' Miami home. Defendant, a police officer assigned to the Robbery Intervention Detail Unit of the Miami–Dade Police Department, was sitting in an unmarked pickup truck across from the house when Alexis arrived. Alexis pulled up in front of the house and got out of the car so he could open the gates to the driveway. He was unarmed. While Alexis was outside of his car and standing at or near the front of his parents' house, Defendant confronted Alexis and shot him to death. Defendant fired multiple shots, even striking Alexis in the back as he turned and tried to go inside the house. Other unidentified officers might have shot at Alexis, too. According to Plaintiff, Alexis posed no threat to Defendant at the time of the shooting.

Plaintiff now brings claims on behalf of Alexis's estate against Defendant in both his individual and official capacities. Plaintiff alleges that Defendant used

excessive force in violation of Alexis's Fourth Amendment rights under 42 U.S.C. § 1983 and is liable for wrongful death under Florida law.  After Defendant moved to dismiss, the district court denied qualified immunity and held that Plaintiff stated a wrongful death claim.[1]  Defendant appeals.

## II.    Discussion

### A.    Jurisdiction and Standard of Review

We typically do not review denials of motions to dismiss because our jurisdiction is limited to appeals from "final decisions" of the district court.  28 U.S.C. § 1291; *see also In re Hubbard*, 803 F.3d 1298, 1305 (11th Cir. 2015) ("A final decision is usually a final judgment or similar order by which a district court disassociates itself from a case." (internal quotation marks and citation omitted)).  There exists however "a small category of decisions that, although they do not end the litigation, must nonetheless be considered 'final.'"  *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 42 (1995) (citations omitted).  "That small category includes only decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action."  *Id.*  An order denying a motion to dismiss on the ground of qualified immunity is a "final decision" within the

---

[1]  Plaintiff also brought against Miami–Dade County a § 1983 municipal liability claim, as well as state-law claims for wrongful death, assault and battery, and negligent failure to train.  The district court dismissed these claims, and they are not at issue in this appeal.

meaning of § 1291.  *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009).  We thus have jurisdiction to review Defendant's claim to qualified immunity.

We review *de novo* a district court's denial of a motion to dismiss, applying the same legal standards that governed the district court.  *Davila v. Gladden*, 777 F.3d 1198, 1203 (11th Cir. 2015).  In determining whether dismissal is warranted on the ground of qualified immunity, we accept the allegations in the complaint as true and construe the facts in the plaintiff's favor.  *Id.*

### B.    Section 1983 Claim

With respect to the individual capacity § 1983 claim, Defendant argues that Plaintiff failed to satisfy basic pleading standards by failing to allege facts sufficient to state a plausible Fourth Amendment violation.  In evaluating whether Defendant is entitled to qualified immunity, we look to whether Plaintiff has alleged (1) the violation of a constitutional right (2) that was clearly established at the time of the incident.[2]  *See St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).  A Fourth Amendment excessive force claim is analyzed under the "objective reasonableness" standard.  *Id.*  Reasonableness is assessed based on all "the facts confronting the officer, regardless of the officer's underlying intent or motivation."  *Id.*  Factors relevant to this analysis include the severity of the crime

---

[2]  Plaintiff does not dispute that Defendant was acting within the scope of his discretionary authority at the time of his actions.  *See Terrell v. Smith*, 668 F.3d 1244, 1250 (11th Cir. 2012) (explaining that in the first step of the qualified immunity analysis, a defendant must show that he was acting within his discretionary authority).

4

at issue, whether the suspect posed an immediate threat of harm, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Penley v. Eslinger*, 605 F.3d 843, 850–51 (11th Cir. 2010). Use of force is judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Defendant argues that the only well-pleaded facts establish that Alexis arrived at his parents' home and was confronted and shot by Defendant as Alexis stood unarmed.[3] Without more, Defendant insists that these facts are insufficient to allow the court to draw a reasonable inference that Defendant acted unreasonably in shooting Alexis. Thus, the mere possibility that Defendant acted unlawfully is insufficient to survive a motion to dismiss. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) ("A facially plausible claim must allege facts that are more than merely possible."). "The plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

---

[3] Plaintiff did allege several additional facts based "upon information and belief," such as that there was no reason to suspect Alexis of engaging in robberies, at no time did Alexis do anything that would have justified the use of deadly force, and Alexis was not being placed under arrest, as he had done nothing wrong. The district court did not consider these facts because Plaintiff had failed to oppose Defendant's argument that they should not be considered. Although Plaintiff now asks us to consider these allegations on appeal, we find that Plaintiff states a claim even without considering the allegations made upon information and belief.

Construing the amended complaint in Plaintiff's favor, we agree with the district court that Plaintiff has alleged a plausible Fourth Amendment violation. Plaintiff alleges that Alexis was unarmed and standing in front of his parents' home when he was shot and killed shortly after arriving home from work. He was even shot at least once in the back as he attempted to retreat indoors. Based on these facts, we infer that Alexis was not committing or attempting to commit a crime, as he was simply returning home. Nor was he fleeing or actively resisting arrest. These facts support Plaintiff's allegation that Alexis did not pose an immediate threat of serious harm when he was shot. In other words, assuming these allegations are true, Defendant was unprovoked when he shot Alexis, who objectively posed no threat.

Still, Defendant faults this analysis for improperly shifting the burden to him to show that his conduct was reasonable when it was Plaintiff's burden to overcome qualified immunity. Defendant insists that there are no facts from which we can infer that Alexis *did not* pose an imminent threat of death or serious physical injury or that Defendant acted unreasonably. Specifically, Defendant criticizes the district court for noting that there were no allegations that Alexis was an immediate threat, was suspected of having committed a crime, or failed to obey instructions. Rather than shifting the burden, however, the court was evaluating the factors relevant to a Fourth Amendment analysis. *See Penley*, 605 F.3d at 850–

6

51.  Given the absence of any factor that would justify the use of force, combined with Plaintiff's factual allegations that Alexis was unarmed and was at one point shot in the back while attempting to retreat into the house, the court correctly held that Plaintiff stated a claim based on Defendant's unreasonable use of deadly force.

Next, Plaintiff must show that the alleged constitutional violation was clearly established at the time of the shooting.  *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014).  To be clearly established, the contours of a right must be "sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it."  *Id.*  "The salient question is whether the state of the law at the time of [the] incident provided fair warning" to Defendant that his "alleged conduct was unconstitutional."  *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).  Our cases have "establish[ed] that unprovoked force against a non-hostile and non-violent suspect who has not disobeyed instructions violates that suspect's rights under the Fourth Amendment."  *Fils v. City of Aventura*, 647 F.3d 1272, 1289 (11th Cir. 2011).  Consequently, the district court properly denied the motion to dismiss the § 1983 claim against Defendant in his individual capacity.

Finally, Defendant argues that the district court failed to address the official capacity § 1983 claim against him.  Defendant correctly points out that an official capacity suit against an officer "is simply another way of pleading an action against an entity of which an officer is an agent."  *Busby v. City of Orlando*, 931

7

F.2d 764, 776 (11th Cir. 1991) (internal quotation marks omitted).  Therefore, any official capacity claim against Defendant is in reality a claim against Miami–Dade County.  Because Plaintiff separately named Miami–Dade County as a defendant, the official capacity claim was redundant.  *See id.*  Moreover, the district court addressed the § 1983 claim against the county and dismissed it.  For that reason, the district court did not fail to address any substantive claims, and we find no reversible error.

### B.    Florida Wrongful Death Claim

Defendant next argues that the district court erred in failing to dismiss the state-law wrongful death claim when the amended complaint lacked factual allegations showing that Defendant's use of force was "clearly excessive" and arose from an intentional tort.  Plaintiff urges this Court to decline pendent appellate jurisdiction over this claim.  As explained above, we have jurisdiction over a denial of qualified immunity because such orders are treated as "final decisions" within the meaning of 28 U.S.C. § 1291.  *Iqbal*, 556 U.S. at 672.  We also have the discretion to exercise pendent appellate jurisdiction over an otherwise nonappealable decision if we already have jurisdiction over another issue in the same case.  *Kelly v. Curtis*, 21 F.3d 1544, 1555 (11th Cir. 1994).  "Under this doctrine, a federal appellate court may address nonappealable orders if they are 'inextricably intertwined' with an appealable decision or if 'review of the former

decision [is] necessary to ensure meaningful review of the latter.'"  *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1335 (11th Cir. 1999) (quoting *Swint*, 514 U.S. at 51).

In *Moniz v. City of Fort Lauderdale*, 145 F.3d 1278, 1281 n.3 (11th Cir. 1998), we held that qualified immunity and standing were not inextricably intertwined because we could resolve the qualified immunity issue without reaching the merits of the standing question.  While Defendant argues that both the § 1983 and wrongful death claims rely on the same underlying facts, the legal inquiry is not the same.  The Fourth Amendment claim requires us to look objectively at Defendant's use of force, while the wrongful death claim would require us to resolve the parties' disputes over whether, under Florida law, the force was "clearly excessive" and whether intentional or merely negligent conduct suffices to state a claim.  These issues, while related, are not inextricably intertwined, and we need not consider the wrongful death claim to ensure meaningful review of qualified immunity.  *See id.*

What's more, we would not promote judicial economy or the rationales for qualified immunity by considering the state-law claim, because we are affirming the denial of qualified immunity and letting the case proceed to discovery anyway. In other cases, we have exercised pendent appellate jurisdiction after granting qualified immunity when consideration of the state claims had the potential to end

litigation against the defendants entirely.  *See Kelly*, 21 F.3d at 1555–56; *see also Schmelz v. Monroe Cty.*, 954 F.2d 1540, 1543 (11th Cir. 1992) (exercising pendent appellate jurisdiction over Eleventh Amendment immunity issue because resolution of that issue "could put an end to the federal aspects of this case").  We decline to exercise jurisdiction over the wrongful death claim and thus dismiss the appeal as to that issue.

## III.    Conclusion

For all the above reasons, we affirm the denial of qualified immunity and dismiss the appeal with respect to the state-law wrongful death claim.

**AFFIRMED in part and DISMISSED in part.**