United States Court of Appeals,

Eleventh Circuit.

No. 94-9222.

Louise SUISSA and Todd Levent, Plaintiffs-Appellees,

v.

FULTON COUNTY, GEORGIA, Fulton County Marshal's Department, Warren H. Shaw, individually and in his official capacity as Marshal of Fulton County, Defendants,

Tom Hubbard, individually and in his official capacity as Captain in the Fulton County Marshal's Department, Defendant-Appellant,

John Boddie, individually and in his official capacity as Major in the Fulton County Marshal's Department, Howard Billingslea, individually and in his official capacity as Sergeant in the Fulton County Marshal's Department, Deleon Ray, individually and in his official capacity as Captain in the Fulton County Marshal's Department, Defendants.

Feb. 6, 1996.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:91-CV-3036-RHH), Robert H. Hall, Judge.

Before TJOFLAT, Chief Circuit Judge, CARNES, Circuit Judge, and FAY, Senior Circuit Judge.

PER CURIAM:

This is an appeal from the district court's denial of qualified immunity to Captain Tom Hubbard of the Fulton County, Georgia, Marshal's Department, on a 42 U.S.C. § 1983 claim involving Hubbard's alleged attempt to influence a departmental grievance report and an EEOC affidavit prepared by the plaintiff, Todd Levent. In *Lassiter v. Alabama A & M University,* 28 F.3d 1146 (11th Cir.1994), we stated:

> The most common error we encounter [in qualified immunity cases], as a reviewing court, occurs on this point: courts must not permit plaintiffs to discharge their burden [of proving the violation of a clearly established right] by referring to general rules and to the violation of abstract "rights."

*Id.* at 1150.  Because the district court committed that "most common error" in this case, we reverse its denial of Hubbard's qualified immunity summary judgment motion.

## I. FACTS

Todd Levent and Louise Suissa are deputy marshals with the Fulton County, Georgia, Marshal's Department.  Both Levent and Suissa are Jewish.  On September 7, 1990, Suissa filed an internal grievance charging that she and Levent had been discriminated against because of their race.  The discrimination allegedly took the form of heavier work assignments, substandard equipment assignments, and disparaging remarks about Jews and Judaism.

On September 11, 1990, Chief Deputy Mike Rary asked Levent to prepare a report of his observations concerning the incidents discussed in Suissa's grievance.  Later that same day, Hubbard allegedly asked Levent to step into a nearby stairwell and attempted, by threatening Levent, to influence how he would write the report.  Levent did not heed Hubbard's alleged threats.  On September 12, 1990, Levent submitted a report to Chief Rary thoroughly and truthfully detailing his knowledge regarding the disparate treatment and harassment alleged in Suissa's grievance.

On October 18, 1990, Suissa filed a charge of discrimination with the EEOC.  On August 19, 1991, approximately eleven months after his alleged conversation with Hubbard in the stairwell, Levent submitted an affidavit to the EEOC in support of Suissa's EEOC charge.  Levent's affidavit largely reflected the contents of his earlier internal report to the Marshal's Department.

On December 6, 1991, Levent and Suissa filed a joint

complaint in the United States District Court for the Northern District of Georgia against Fulton County, Georgia, the Fulton County Marshal's Department, and various employees of the Marshal's Department in their individual and official capacities, including Hubbard. In their complaint, Levent and Suissa alleged violations of 42 U.S.C. §§ 1981 and 1983, violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and a state claim for intentional infliction of emotional distress. The defendants moved for summary judgment on various grounds, including on the basis of qualified immunity as to those claims asserted against the defendants in their individual capacities. The district court granted in part and denied in part the defendants' motion for summary judgment. The only issue on appeal involves the district court's denial of qualified immunity to Hubbard for his unsuccessful alleged attempt to influence Levent's departmental report and EEOC affidavit.[1] We have jurisdiction to hear an

---

[1]The district court did not rule on whether the defendants were entitled to qualified immunity on the plaintiffs' retaliation claim. Instead, the district court denied summary judgment on this claim on the merits, holding that there was a genuine issue of material fact as to whether the defendants retaliated against the plaintiffs for their grievance and EEOC reports. As we have said before:

> The district court's order declining to rule on the qualified immunity issue pending trial effectively denies defendants the right not to stand trial. Because the "reserved ruling" is not materially different from an outright denial of a summary judgment motion, an immediate appeal on the qualified immunity issue is permissible.

*Collins v. School Bd. of Dade County, Fla.*, 981 F.2d 1203, 1205 (11th Cir.1993). Although the defendants could have appealed the effective denial of their qualified immunity summary judgment motion on the retaliation claim, they have not done so. Therefore, we do not reach the question of

interlocutory appeal from a district court's denial of summary judgment based on qualified immunity. *See Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985). "The denial of qualified immunity is a question of law to be reviewed *de novo."* *Swint v. City of Wadley, Ala.,* 51 F.3d 988, 994 (11th Cir.1995).

## II. DISCUSSION

"Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no "clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Lassiter,* 28 F.3d at 1149 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). "Although the cases sometimes refer to the doctrine of qualified "good faith' immunity, the test is one of objective legal reasonableness, without regard to whether the government official involved acted with subjective good faith." *Swint,* 51 F.3d at 995. "[W]e look to whether a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred." *Id.* (alteration in original) (citation and quotation marks omitted). "Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law.' " *Id.* (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096,

---

whether the defendants are entitled to qualified immunity as to the retaliation claim.

89 L.Ed.2d 271 (1986)).

When a defendant government official raises the defense of qualified immunity, first he must prove that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Sammons v. Taylor,* 967 F.2d 1533, 1539 (11th Cir.1992). Levent concedes that Hubbard was acting within the scope of his discretionary authority. Because that component of qualified immunity is established, "the burden shifts to the plaintiff to demonstrate that the defendant "violated clearly established constitutional law.' " *Id.* (quoting *Zeigler v. Jackson,* 716 F.2d 847, 848 (11th Cir.1983)).

"If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant. The line is not to be found in abstractions—to act reasonably, to act with probable cause, and so forth—but in studying how these abstractions have been applied in concrete circumstances." *Lassiter,* 28 F.3d at 1150 (citations and quotation marks omitted).

> When considering whether the law applicable to certain facts is clearly established, the facts of cases relied upon as precedent are important. The facts need not be the same as the facts of the immediate case. But they do need to be materially similar. Public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases.

*Adams v. St. Lucie County Sheriff's Dep't,* 962 F.2d 1563, 1575 (11th Cir.1992) (Edmondson, J., dissenting), *approved en banc,* 998 F.2d 923 (11th Cir.1993). "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent

that what the defendant is doing violates federal law *in the circumstances."* *Lassiter,* 28 F.3d at 1150. We will address the attempt to influence the grievance report and the attempt to influence the EEOC affidavit separately.

### A. Attempt to Influence the Departmental Report

Levent has not offered, nor have we been able to find, any case wherein an unsuccessful attempt, through speech, to influence another's protected speech has been held to violate the First Amendment. The only cases Levent offers in support of his argument that Hubbard violated a clearly established First Amendment right are cases involving retaliation against protected speech. *See, e.g., Pickering v. Board of Educ. Township High Sch. Dist. 205, Will County, Ill.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Bryson v. City of Waycross,* 888 F.2d 1562 (11th Cir.1989), *reh'g denied,* 894 F.2d 414 (11th Cir.1990). Although Levent has claimed that the defendants retaliated against him for submitting his departmental report and his EEOC affidavit, that claim is not before us on this appeal.[2] Our focus must, therefore, be a narrow one: whether the law was clearly established at the time of Hubbard's alleged actions that an unsuccessful attempt to influence speech violates the First Amendment. The facts of the speech retaliation cases involve retaliation after speech occurs, which is not "materially similar" to unsuccessful attempts to prevent or influence protected speech. Both situations involve speech and the First Amendment, but that is far too general a level of abstraction for qualified immunity purposes. *See Lassiter,* 28 F.3d at 1150.

---

[2]*See supra* note 1.

Stated somewhat differently, the speech retaliation decisions do not "dictate, that is truly compel," *id.,* the conclusion that an unsuccessful attempt to prevent protected speech violates the First Amendment. Therefore, the district court should have granted Hubbard's motion for summary judgment on qualified immunity grounds.

### B. Attempt to Influence the EEOC Affidavit

The same is true of the claim involving Hubbard's alleged attempt to influence Levent's EEOC affidavit. The district court's order does not make clear whether it found the evidence sufficient for a jury to find that Hubbard knew or contemplated that Levent might be filing an EEOC affidavit, as Levent did eleven months after Hubbard spoke to him in the stairwell. However, even assuming that the district court did find the evidence sufficient for a jury question on that issue, *see Johnson v. Jones,* --- U.S. ----, ----, 115 S.Ct. 2151, 2159, 132 L.Ed.2d 238 (1995), it nonetheless should have granted Hubbard's motion for summary judgment on qualified immunity grounds. Just as no decision clearly establishes that the First Amendment is violated by an unsuccessful attempt to influence protected speech in general, none clearly establishes that it is violated by an unsuccessful attempt to influence an EEOC affidavit in particular.

### III.

We REVERSE the district court's denial of Hubbard's qualified immunity summary judgement motion on the claim for attempt to influence Levent's grievance report and EEOC affidavit, and REMAND for further proceedings consistent with this opinion.