[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 21, 2002
THOMAS K. KAHN
CLERK

No. 01-12159

————————————————

D. C. Docket No. 99-01947-CV-T-24E

THERESA ST. GEORGE, individually and as
personal representative of the Estate of Michael
J. St. George, deceased,
MICHAEL ST. GEORGE, individually and as
personal representative of the Estate of Michael
J. St. George, deceased,

Plaintiffs-Appellants,

versus

PINELLAS COUNTY,

Defendant,

EVERETT S. RICE, individually and in his
official capacity as Sheriff of Pinellas County,
STEPHEN M. MITCHELL, individually and
in his official capacity as Deputy Sheriff of
Pinellas County,

Defendants-Appellees.

————————————————

Appeal from the United States District Court
for the Middle District of Florida

————————————————

**(March 21, 2002)**

Before WILSON, HILL and FAY, Circuit Judges.

HILL, Circuit Judge:

This appeal involves a seven-count complaint filed pursuant to 42 U.S.C. §

1983 by Michael and Theresa St. George, parents of deceased seventeen-year-old

Michael J. St. George, and the personal representatives of his estate, stemming

from the 1997 shooting death of young St. George by Pinellas County, Florida

Deputy Sheriff M. Mitchell.  The claims allege lack of probable cause,

unreasonable seizure, excessive force, unlawful punishment, battery and wrongful

death.

We discuss only one of the three issues raised in this appeal[1]:  whether the

district court properly granted the defense of qualified immunity to Deputy Sheriff

Stephen M. Mitchell in response to his motion to dismiss Counts I and II of the

complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2]  We

---

[1] The other two issues are: (1) whether the district court properly granted
summary judgment to Pinellas County Sheriff Everett S. Rice, individually and in
his official capacity; and (2) whether the district court erred in dismissing Pinellas
County as a named defendant.  These issues are without merit and affirmed without
discussion.  *See* 11th Cir. R. 36-1.

[2] The October 22, 1999, order dismisses two Section 1983 counts brought
against Mitchell individually and in his official capacity: (1) Count I for
unreasonable seizure and lack of probable cause; and (2) Count II for unreasonable
seizure and excessive force.  Count III was dismissed previously by the district
court for failure to state a claim upon which relief can be granted and is not the
subject of this appeal.

conclude that the complaint alleges facts sufficient to defeat Mitchell's defense of qualified immunity at this stage of the proceedings, and reverse the October 22, 1999, order of the district court and remand for further proceedings.[3]

I.

According to the complaint, on June 23, 1997, the day of the shooting, a confidential informant (CI) called the Pinellas County Sheriff's office to report gunshots and a tan vehicle containing marijuana plants traveling in the vicinity of Carolina Avenue, Tarpon Springs. The CI called a second time to report that the car was gray, not tan, and was parked behind a convenience store located at the corner of Klosterman Road and Alternate 19. According to the CI, the driver of the gray car was inside the store, wearing shorts, a baseball cap and no shirt. The car's passenger was hiding behind the store.

Three deputies responded to the calls, Mitchell, in his police cruiser, and Deputy Kenneth R. Lilly, Jr. and Corporal Randall M. Jones, in theirs. Lilly and Jones located the gray car at the convenience store and seized passenger Mike Thomas Ralston at gunpoint, placing him in the back of their police cruiser.

---

[3] We hold no opinion on whether or not the defense of qualified immunity would be properly granted to Mitchell after presentation of evidence at a hearing on a motion for summary judgment. *See Pace v. Capobianco*, ___ F.3d ___ (11th Cir. March 1, 2002).

Mitchell and Jones then searched inside the store and found no one matching the description of the driver. Thereafter the CI called a third time to report that the driver of the car, later identified as Robbie Ryan Robinson, was now running across Alternate 19 in the direction of Carolina Avenue. In an attempt to find Robinson, Mitchell drove toward Carolina Avenue.

In the meantime, St. George and a fifteen-year old female, Jamie Lee King, were inside a residence located at 1970 Carolina Avenue. St. George received a telephone call from an unknown individual. He immediately grabbed a duffel bag, told King he would be right back, and left the house. Capless, and wearing shorts and a t-shirt, St. George did not match the description of the gray car's driver.

About the same time, a neighbor informed Mitchell that an individual had recently fled the residence at 1970 Carolina Avenue in the direction of Pinellas Trail. Mitchell, with side arm drawn, gave chase on foot. Aware that he was being chased, St. George returned to the house and entered through the front door.[4] King saw St. George enter the kitchen, seize a holstered gun and a small green box, and reach for the refrigerator door.

---

[4] In 2000, in granting plaintiffs' motion to amend complaint to correct scrivener's error, changing the word "aware" to "unaware," the district court reaffirmed its previous grant of qualified immunity to Mitchell, finding that the change had no impact on its prior determination.

As Mitchell approached the house he could see St. George through the open kitchen window. Without specifically looking through the window[5], he shot St. George twice, one in the left leg and then in the upper left back. The complaint claims that St. George never took any action to threaten Mitchell's safety. After the shots were fired, Mitchell ran around to the front of the house and entered through the front door at or about the same time as Jones. Thereafter paramedics arrived and pronounced St. George dead.

King, observing St. George throughout the entire incident, saw two items on the floor near St. George's body, the holstered gun and a small green box. In documenting the crime scene, the detective in charge noted three items on the kitchen floor, the holster, the gun outside of the holster, and a small green box.

## II.

We have jurisdiction to review the grant of the defense of qualified immunity pursuant to 28 U.S.C. § 1291. *See Mitchell v. Forsyth*, 105 S.Ct. 2806

---

[5] This fact is based upon the district court's observation in note 1 of its October 22, 1999, order as to the allegation in the complaint that states: "[b]efore Defendant Mitchell looked through the kitchen window, [sic] aimed his side arm at St. George and fired two (2) fatal shots at Michael J. St. George." Construing this allegation in favor of the plaintiffs, the district court found, and we agree, that the plaintiffs meant that Mitchell saw St. George through the kitchen window, and without approaching the window to specifically look through it, fired the shots at St. George.

(1985).  While the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be, as it was in this case, raised and considered on a motion to dismiss.  *See Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001).  The motion to dismiss will be granted if the "complaint fails to allege the violation of a clearly established constitutional right." *Id.* (*citing Williams v. Ala. State Univ.*, 102 F.3d 1179, 1182 (11th Cir. 1997)).  Whether the complaint alleges such a violation is a question of law that we review *de novo*, accepting the facts alleged in the complaint as true and drawing all reasonable inferences in the plaintiff's favor.  *Id.*  The scope of the review must be limited to the four corners of the complaint.  *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).  While there may be a dispute as to whether the alleged facts are the actual facts, in reviewing the grant of a motion to dismiss, we are required to accept the allegations in the complaint as true.  *See Wilson v. Strong*, 156 F.3d 1131, 1132 (11th Cir. 1998).  Once an officer has raised the defense of qualified immunity, the burden of persuasion on that issue is on the plaintiff.  *See, e.g., Suissa v. Fulton County*, 74 F.3d 266, 269 (11th Cir. 1996).

## III.

On the date of the shooting of St. George by Mitchell, June 23, 1997, the law was clearly established that an excessive force claim against a police officer must

6

be analyzed under the Fourth Amendment and its reasonableness standard. *Montoute v. Carr*, 114 F.3d 181, 183 (11th Cir. 1997), *citing Graham v. Connor*, 109 S.Ct. 1865, 1871 (1989). The question to be decided is whether the officer's actions are objectively reasonable in light of the facts confronting the officer, regardless of the officer's underlying intent or motivation. *Id.*, 109 S.Ct. at 1872.

It is not unconstitutional to use deadly force to prevent escape "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical injury, either to the officer or to others." *Tennessee v. Garner*, 105 S.Ct. 1694, 1701 (1985). In order to be entitled to qualified immunity, an officer need have only "arguable probable cause." *See Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995). We then ask not whether probable cause existed but whether the officer reasonably believed it existed, based upon the information he or she possessed at the time of the incident. *See Hunter v. Bryant*, 112 S.Ct. 534, 537 (1991). "An officer is not required to wait until an armed and dangerous felon has drawn a bead on the officer or others before using deadly force." *Montoute*, 114 F.3d at 185. Use of force is judged on a case-by-case basis "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 109 S.Ct. at 1871.

Mitchell was responding to a report by a confidential informant of shots fired and the presence of illegal drugs in a gray car in the vicinity of Carolina Avenue. When the gray car was located at a nearby convenience store, no drugs were found inside. Another call reported that the driver of the gray car was seen running in the direction of Carolina Avenue wearing shorts, a baseball cap and no shirt. Mitchell responded on foot with his side arm drawn. He observed St. George running from the woods into a residence located at 1970 Carolina Avenue wearing shorts, a light gray t-shirt and bareheaded.

When St. George entered the residence, the complaint alleges that he seized a holstered gun and a small green box. He then went to the kitchen and opened the refrigerator door, holding the holstered gun and the green box at his side. Mitchell approached the kitchen window and, without observing through the window anything more than his quarry, fired two shots, killing St. George. *See* note 4 *supra*. The complaint alleges that St. George never took any action to threaten the safety of Mitchell. He did not take the gun from its holster. He did not point it in Mitchell's direction. After the shooting, King observed two items on the floor near St. George's body: (1) the gun, still in its holster, and (2) the small green box. In later documenting the scene, the investigating detective noted three items on the kitchen floor: (1) the gun, (2) its holster, and (3) the small green box. The

complaint alleges that the scene was disturbed in order to conceal the wrongful shooting of St. George by Mitchell.

In reviewing this grant of qualified immunity by the district court to Mitchell on a Rule 12(b)(6) motion to dismiss, we must construct our own firewall between the facts pleaded in the complaint and any evidence, construing the complaint in the favor of the plaintiffs. *Williams*, 102 F.3d at 1182. Here we find that the district court construed the complaint in favor of the defendant.

We find that there are eight sets of facts alleged in the complaint that are pertinent to, and sufficient to overcome, the motion to dismiss in this case. They are that: (1) St. George did not fit the description of the suspect being sought by Mitchell; (2) there was no probable cause for Mitchell to believe that St. George had committed a felony; (3) St. George was within the confines of his residence when he picked up the holstered handgun and small green box; (4) Mitchell, from outside the residence, without informing himself of what St. George was doing, fired two shots through the kitchen window, mortally wounding him; (5) St. George, reaching for the refrigerator door, holding a holstered gun at his side, was neither threatening Mitchell by pointing a gun at him, nor in a position of flight; (6) St. George was not facing Mitchell when he was shot; (7) King saw the gun, still in the holster, on the kitchen floor immediately after the shooting; and (8) the

gun was allegedly removed from its holster by an unknown police officer after the shooting.

For these reasons, the plaintiffs have met their initial burden of persuasion. *See, e.g., Suissa*, 74 F.3d at 269. We conclude that Mitchell, in his individual and official capacity, is not entitled to the defense of qualified immunity at this stage of the case. While all other orders on appeal are affirmed without discussion, the October 22, 1999, order of the district court granting qualified immunity to Mitchell on his motion to dismiss Counts I and II is reversed, and this case is remanded to the district court for further proceedings consistent with this opinion. *See* note 1 *supra.*

REVERSED and REMANDED.