[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-14958
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 07 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-22970-CV-PCH

LORNE BATTISTE,
LAURA WINTER,
RICKY HAMBLIN,
LUIS CARDONA,

Plaintiffs-Appellees,

versus

SHERIFF OF BROWARD COUNTY, et al.,

Defendants,

GREGORY GOODWEIN, Broward Deputy,
MARIO BARCELO, Broward Deputy,
MELVIN WILKIN, Broward Deputy,

Defendants,

CHIEF OF POLICE CITY OF MIAMI,

Defendant-Appellant.

———————————————

Appeals from the United States District Court
for the Southern District of Florida

———————————————

**(January 7, 2008)**

Before ANDERSON, BLACK and MARCUS, Circuit Judges.

PER CURIAM:

Miami Police Chief John Timoney appeals the district court's denial of his motion to dismiss, on qualified immunity grounds, Counts XIV and XV of the plaintiffs' Second Amended Complaint. The plaintiffs are four union activists who, while peacefully protesting at the Free Trade Area of the Americas ("FTAA") in downtown Miami in November 2003, were detained without probable cause by officers of the Broward County Sheriff's Office ("BSO").[1] At the time, the BSO officers were operating under the direct supervision of the Miami Police Department and Chief Timoney pursuant to a mutual aid agreement. The plaintiffs sued Chief Timoney in his individual capacity under 42 U.S.C. § 1983, seeking to hold him liable for the unlawful arrests based on his supervisory

———————————————

[1] In reviewing a motion to dismiss, we must accept the allegations of the plaintiffs' amended complaint as true. Cottone v. Jenne, 326 F.3d 1352, 1355 & n.1 (11th Cir. 2003). Naturally, however, "the facts" that we set out in this opinion may not prove to be the actual facts. Id. at 1355 n.1.

2

role. The plaintiffs offered two theories of liability, alleging (1) that Chief Timoney failed to train the officers beneath him (Count XIV) and (2) that Chief Timoney designed and implemented unlawful policies (Count XV). Chief Timoney moved to dismiss both counts, arguing that he is entitled to qualified immunity for his actions. The district court denied his motion.

A defense of qualified immunity may be addressed in a motion to dismiss, which will be granted if the "complaint fails to allege the violation of a clearly established constitutional right." St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002). We review *de novo* whether the complaint alleges such a violation, accepting the facts alleged in the complaint as true, drawing all reasonable inferences in the plaintiffs' favor, and limiting our review to the four corners of the complaint. Id. Once an officer has raised the defense of qualified immunity, the plaintiffs bear the burden of persuasion to show that the officer is not entitled to it. Id.

The Supreme Court has established a two-part test for determining whether an officer is entitled to qualified immunity. "The threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." Hope v. Pelzer, 536 U.S. 730, 736, 122 S. Ct. 2508, 2513 (2002). "[I]f a violation could be made out on a favorable

3

view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001).

Our threshold inquiry is thus whether Chief Timoney's actions, as alleged by the plaintiffs, violate the Constitution. A supervisory official is not liable under § 1983 solely on the basis of respondeat superior or vicarious liability. Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990). Nonetheless, when a supervisor does not personally participate in the alleged constitutional violation, the supervisor may still be liable for the unconstitutional acts of subordinates if "there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." Id. "A causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so,' or when the supervisor's improper 'custom or policy . . . resulted in deliberate indifference to constitutional rights.' " Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003) (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." Braddy v. Fla. Dep't of Labor & Employment Sec., 133 F.3d 797, 802 (11th Cir. 1998).

4

In Count XIV, the plaintiffs allege that Chief Timoney failed to adequately train the officers beneath him despite the existence of an October 2000 report, which put him on notice of widespread unjustified arrests by Miami police during past large-scale public protests.[2] A supervisory official is liable under § 1983 when "his 'failure to train amounts to deliberate indifference to the rights of persons with whom the subordinates come into contact' and the failure has actually caused the injury of which the plaintiff complains." Belcher v. City of Foley, Ala., 30 F.3d 1390, 1397 (11th Cir. 1994) (quoting Popham v. City of Talladega, 908 F.2d 1561, 1564-65 (11th Cir. 1990)). Although the report was issued before Chief Timoney took over the Miami Police Department, he should have been aware of the report's existence, and in light of the alleged widespread past abuses, the plaintiffs' allegations of a failure to train the officers under his command in advance of the FTAA could constitute deliberate indifference for which he may be liable. And plaintiffs' allegations create an issue of fact as to whether a failure to train had the necessary causal relation.

In Count XV, the plaintiffs allege that Chief Timoney enacted policies that resulted in deliberate indifference to the plaintiffs' constitutional rights.

---

[2]The "Ad Hoc Committee to Investigate Police Community Relations," which was established by the City of Miami Commission, issued this report.

Specifically, the plaintiffs point to Chief Timoney's failure to establish a unified command center and his failure to plan for and provide a safe route of egress from the downtown area for peaceful protesters. These alleged failures on the part of Chief Timoney are not causally related to the officers' unlawful arrest of the plaintiffs. The plaintiffs complain about the lack of communication that could result from a failure to establish a unified command center. However, the plaintiffs fail to explain how this deficiency contributed to the actions of the BSO officers in arresting the plaintiffs without probable cause. Similarly, the plaintiffs fail to explain how the evacuation route which they took contributed to the decision of the BSO officers to arrest them notwithstanding the absence of probable cause. As such, the plaintiffs have not established a constitutional violation in Count XV, and accordingly, Chief Timoney is entitled to qualified immunity on this count.

Although Chief Timoney's failure to train, as alleged, could constitute a constitutional violation, we must still evaluate whether such a violation was clearly established at the time. The Supreme Court has emphasized that "determining whether a constitutional right was clearly established 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" Vinyard v. Wilson, 311 F.3d 1340, 1349 (11th Cir. 2002) (quoting

6

Saucier, 533 U.S. at 201, 121 S. Ct. at 2151)).  The Supreme Court has variously defined the relevant, dispositive inquiry as "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted," Saucier, 533 U.S. at 202, 121 S. Ct. 2151, and "whether the state of the law . . . gave [the officer] fair warning" that his actions were unconstitutional, Hope, 536 U.S. at 741, 122 S. Ct. at 2516.  In most cases, fact-specific precedents are necessary to give an officer fair warning of the applicable law.  See Vinyard, 311 F.3d at 1351-52.  Although government officials may be liable for a failure to train subordinates under some circumstances, the plaintiff cites no case, and we have found none, that would have given an official fair warning that a police chief, faced with past unjustified arrests by his department at public protests, must train "borrowed" law enforcement officers from other jurisdictions to arrest only upon probable cause.  Because Chief Timoney did not have fair warning that his failure to train borrowed officers violated the Constitution, he is entitled to qualified immunity on Count XIV as well.

Accordingly, the district court is **REVERSED**.[3]

---

[3]The appellant's request for oral argument is **DENIED**.