[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-13161
Non-Argument Calendar
_____

D.C. Docket No. 2:20-cv-00002-JHE

JOLENE GUNTER HASTINGS,
as the administrator of the estate of Kathleen Taylor Gunter,

Plaintiff - Appellant,

versus

ADVANCED CORRECTIONAL HEALTHCARE, INC., et al.,

Defendants - Appellees,

MARLEE BELL,
KIMBERLY HOLMES,
KATELYN PAYNE,
TERRY SCOTT,
TALIA RUSSELL, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(February 4, 2021)

Before NEWSOM, LAGOA, and EDMONDSON, Circuit Judges.

PER CURIAM:

In this interlocutory appeal, Plaintiff Jolene Hastings -- administrator of the estate of Kathleen Gunter ("Gunter") -- appeals the district court's partial dismissal of Plaintiff's civil action filed pursuant to 42 U.S.C. § 1983 and Alabama law. Briefly stated, Plaintiff's complaint arises out of Gunter's suicide while Gunter was a detainee in the Jefferson County Jail ("Jail"). No reversible error has been shown; we affirm.

I.    Background

Plaintiff filed this civil action against (1) Advanced Correctional Healthcare, Inc. ("ACH"), a medical provider under contract to provide medical care to

2

inmates at the Jail; (2) ACH employees Nurse Kathy Gay and Nurse Sarah Gardiner; (3) six officers with the Jail; and (4) Jefferson County, Alabama. Pertinent to this appeal, the district court granted motions to dismiss filed by ACH and Nurses Gay and Gardiner (collectively, "Medical Defendants").[1]

Plaintiff alleged these facts in her complaint. At about 1:11 p.m. on 5 January 2018, Gunter was booked into the Jail in connection with a misdemeanor drug offense. A couple of hours later, an unnamed ACH nurse practitioner conducted an intake medical screening. During that medical screening, Plaintiff says the unnamed ACH nurse practitioner noted that Gunter had a history of seizures, insomnia, and "depression and anxiety for which[] she had either been admitted to a mental health facility or was currently receiving mental health services." Gunter was under the care of two doctors and had been prescribed four medications: (1) Lexapro (an antidepressant and/or anti-anxiety medication); (2) Klonopin (an anti-seizure medication); (3) Neurontin (an anti-epileptic medication); and (4) Trazodone (an antidepressant medication).

About Gunter's cognitive state, the unnamed ACH nurse noted that Gunter was slow to respond and that her speech was slow and difficult to understand. Gunter was also described as distracted, having a flat affect, and as exhibiting slow

---

[1] The district court -- pursuant to Fed. R. Civ. P. 54(b) -- certified for immediate appeal only Plaintiff's claims against Defendants ACH, Nurse Gay, and Nurse Gardiner.

and guarded balance and gait.  The ACH nurse opined that Gunter was likely medicated or under the influence of substances.

Plaintiff alleged that another intake medical screening -- performed at the Jail five years earlier in January 2013 -- documented that Gunter had a history of opiate dependency and anxiety.

After completing her medical screening, Gunter was placed in the general-population holding cell.  Shortly thereafter, Gunter began flushing repeatedly the toilets, causing the area to flood.  At about 4:49 p.m., Gunter was involved in a physical altercation with two deputies.  At that point, Gunter was placed in a cell by herself.  The cell (identified in the complaint as "cell A10 located on level 5") was equipped with closed-circuit television cameras that could be monitored by jail staff.[2]

Plaintiff alleged that "at no time was Ms. Gunter reassessed by ACH personnel or psychology or psychiatry staff members."  Nor was Gunter given her known prescribed medications or other medications for withdrawal syndrome.

At about 3:22 p.m. on 6 January 2018, Gunter began ripping her bed sheet.  At about 3:36 p.m., Gunter stood on a table and tied the sheet to a pipe on the

---

[2] In her appellate brief, Plaintiff characterizes the cell in which Gunter was placed as a "suicide watch" cell.  Because the complaint contained no such allegation, we will not consider this supposed "fact" as part of our analysis.  In reviewing the district court's grant of a motion to dismiss, our review is "limited to the four corners of the complaint."  See St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002).

ceiling.  Gunter then tied the remainder of the sheet around her neck, stood on the

table, and attempted -- unsuccessfully -- to hang herself.  At about 3:39 p.m.,

Gunter made a second attempt to hang herself and succeeded.  Gunter's body was

discovered at 4:18 p.m.

Plaintiff later filed this civil action.  Pertinent to this appeal, Plaintiff

asserted that ACH[3] and Nurses Gay and Gardiner were deliberately indifferent to

Gunter's serious medical needs in violation of the Fourteenth Amendment.[4]

Plaintiff also asserted against ACH claims for (1) violation of Alabama's Medical

Liability Act ("AMLA"), Ala. Code § 6-5-480 et seq., and for (2) respondeat

superior/vicarious liability for the negligent, reckless, or wanton conduct of ACH's

employees.[5]

The district court dismissed -- pursuant to Fed. R. Civ. P. 12(b)(6) --

Plaintiff's claims against ACH and Nurses Gay and Gardiner for failure to state a

---

[3] The district court construed Count Three -- "Deprivation of Life Without Due Process in Violation of the Fourteenth Amendment" asserted against all Defendants -- as asserting a claim against ACH for deliberate indifference to Gunter's serious medical needs.

[4] Because Gunter was a pretrial detainee at the time of her suicide, Plaintiff's section 1983 claim for deliberate indifference is based on the Fourteenth Amendment's due process clause.  See Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1115 (11th Cir. 2005). Our analysis of a claim for deliberate indifference -- whether asserted under the Eighth Amendment or the Fourteenth Amendment -- is the same.  See Tittle v. Jefferson Cnty. Comm'n, 10 F.3d 1535, 1539 (1994).

[5] Plaintiff also asserted against ACH state law claims for negligence and wantonness.  The district court determined these tort claims were governed by the AMLA and, thus -- as a matter of Alabama law -- Plaintiff could assert no independent negligence or wantonness claims against the Medical Defendants.  Plaintiff raises no challenge to this ruling on appeal.

claim.  The district court concluded that Plaintiff had failed to allege facts sufficient to support a reasonable inference that Gunter's suicide was foreseeable: a necessary element of Plaintiff's claims under both section 1983 and state law.

II.    Discussion

We review de novo the district court's dismissal under Rule 12(b)(6), "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff."  Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).  To survive dismissal for failure to state a claim, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations and alteration omitted).  Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation omitted).  To state a plausible claim for relief, plaintiffs must go beyond merely pleading the "sheer possibility" of unlawful activity by a defendant; plaintiffs must offer "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

As an initial matter, we reject Plaintiff's assertion that foreseeability inherently is a factual issue that cannot be resolved at the motion-to-dismiss stage. To survive dismissal, Plaintiff must allege facts sufficient to raise a right to relief that is above the speculative level. See Twombly, 550 U.S. at 555. In her appellate brief, Plaintiff says that "because discovery had not yet taken place, []Plaintiff has not yet been able to discover in any way the extent to which Gunter's suicide could have been foreseen and thus prevented." Federal pleading standards do not, however, "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." See Iqbal, 556 U.S. at 678-79.

### A.  *Fourteenth Amendment Deliberate Indifference*

"To establish liability for a prisoner's suicide under section 1983, the plaintiff must show that the jail official displayed 'deliberate indifference' to the prisoner's taking of his own life." Gish v. Thomas, 516 F.3d 952, 954 (11th Cir. 2008) (quotations omitted). To establish deliberate indifference, the plaintiff must demonstrate that the jail official "had subjective knowledge of a risk of serious harm and disregarded that risk by conduct that constituted more than mere negligence." Id.

7

In the context of a prison suicide, "deliberate indifference requires that the defendant deliberately disregard a <u>strong likelihood</u> rather than a mere possibility that the self-infliction of harm will occur." <u>Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla</u>., 402 F.3d 1092, 1115 (11th Cir. 2005) (quotation omitted) (emphasis in original). "The mere opportunity for suicide, without more, is clearly insufficient to impose liability on those charged with the care of prisoners." <u>Id</u>. In other words, a plaintiff must show that the prisoner's self-infliction of harm was foreseeable to the defendant. <u>See id</u>. at 1116. We have stressed that "the law of this circuit makes clear that [a prison official] cannot be liable under § 1983 for the suicide of a prisoner who never had threatened or attempted suicide and who had never been considered a suicide risk." <u>See id</u>.

Plaintiff alleged no facts that would support a reasonable inference that ACH or an ACH employee (including Nurses Gay and Gardiner)[6] knew about a strong likelihood that Gunter would try to commit suicide. Based on the allegations in the complaint, an ACH nurse noted that Gunter had a history of depression and anxiety for which Gunter had either been admitted to a mental health facility at some unknown time in the past or was currently receiving mental health treatment. Gunter was also taking four prescribed medications, including two antidepressants.

---

[6] Plaintiff's complaint contains no factual allegation describing Nurse Gay or Nurse Gardiner's interaction with Gunter or involvement in Gunter's medical care at the Jail.

The ACH nurse observed that Gunter appeared to be medicated or under the influence of drugs. An earlier, years-old intake medical screening also showed that Gunter suffered opiate dependency.

Never did Plaintiff allege that Gunter told or otherwise signaled to an ACH nurse about a history of suicidal thoughts or attempts or otherwise exhibited -- in the presence of an ACH nurse -- behavior indicating suicidal thoughts or plans. No allegations support an inference that the Medical Defendants knew about Gunter's conduct or condition after the time on 5 January 2018 when medical screening ended. Nor did Plaintiff allege that Gunter in fact had ever attempted or threatened suicide in the past or had ever been considered a suicide risk.

In short, nothing in Gunter's known medical history or conduct known to an ACH employee would have put the Medical Defendants on notice of a strong likelihood that Gunter would commit suicide.

Within Plaintiff's substantive claim for deliberate indifference, Plaintiff asserted that Nurses Gay and Gardiner "knew" that Gunter "had a history of suicidal thoughts and behaviors." Plaintiff also asserted that Nurses Gay and Gardiner "knew" that Gunter was likely to "experience significant psychological distress during detoxification, including the development of suicidal ideation, plan, and intent." Despite alleging "knew," the complaint contains no factual allegations from which we can draw an inference that -- to the extent Gunter had a history of

9

suicidal tendencies or Gunter, in fact, was to attempt suicide in the near future --

Nurses Gay or Gardiner had actual knowledge of that history or could do more

than speculate (not, in a subjective sense, know) about Gunter's likely future

conduct.  Plaintiff's conclusory allegations are the kind of "naked assertions

devoid of further factual enhancement" that are insufficient to avoid dismissal.  See

Iqbal, 556 U.S. at 678 (quotations and alteration omitted); see also Oxford Asset

Mgmt. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002) ("conclusory allegations,

unwarranted deductions of facts or legal conclusions masquerading as facts will

not prevent dismissal" under Rule 12(b)(6)).

Plaintiff's factual allegations are insufficient to support a reasonable

inference of a "strong likelihood" that Gunter would commit suicide or that

Gunter's suicide was foreseeable to the Medical Defendants.  The district court

thus committed no error in dismissing Plaintiff's deliberate indifference claims

against ACH and Nurses Gay and Gardiner.

B.  *State Law Claims Against ACH*

Under Alabama law, "[t]he controlling factor in determining whether there

may be a recovery for a failure to prevent a suicide is whether the defendants

10

reasonably should have anticipated that the deceased would attempt to harm himself." Popham v. Talladega, 582 So. 2d 541, 543 (Ala. 1991). The Alabama Supreme Court has established that the "foreseeability of a decedent's suicide is legally sufficient only if the deceased had a history of suicidal proclivities, or manifested suicidal proclivities in the presence of the defendant, or was admitted to the facility of the defendant because of a suicide attempt." Id. (citing Keebler v. Winfield Carraway Hosp., 531 So. 2d 841 (Ala. 1988), and Keeton v. Fayette Cnty., 558 So. 2d 884 (Ala. 1989)).

Gunter was booked at the Jail because of a drug offense -- not a suicide attempt. And the complaint alleges no facts from which we may infer reasonably that Gunter had a history of suicidal tendencies, that such history was known to the Medical Defendants, or that Gunter exhibited signs of suicidal tendencies in the presence of the Medical Defendants.

In support of her state law claim against ACH, Plaintiff says only that "ACH knew or should have known" that "the frequency of suicide attempts is substantially higher among patients with a substance use disorder" and "knew or should have known that Ms. Gunter was likely to experience significant psychological distress during detoxification, including the development of suicidal ideation, plan, and intent." These broad allegations are insufficient to establish foreseeability in the legal sense.

11

Because Plaintiff has failed to allege facts sufficient to show that ACH (or an ACH employee) should have anticipated reasonably that Gunter would try to harm herself, Plaintiff has stated no plausible claim for relief.  The district court dismissed properly Plaintiff's claims against ACH based on Alabama's Medical Liability Act and based on a theory of vicarious liability.

AFFIRMED.