[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-10412

Non-Argument Calendar

_____

BOBBY WAYNE EDGAR,

Plaintiff-Appellant,

*versus*

MARION B. BRUNSON,
JUSTIN A. SPENCE,
ANTHONY TEW,
CITY OF ELBA,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 1:22-cv-00620-KFP

_____

Before JILL PRYOR, BRANCH, and BRASHER, Circuit Judges.

PER CURIAM:

Officers Marion B. Brunson, Justin A. Spence, and Anthony Tew saw Bobby Wayne Edgar struggling to walk down the street with a blanket draped around him. Edgar refused the officers' attempts to persuade him to go to the hospital, and the officers arrested him for public intoxication, among other things. Edgar filed suit against the officers, asserting claims of false arrest, excessive force, denial-of-medical care, and claims under state law. The district court dismissed his claims. We affirm.

## I.

The following facts come from Edgar's complaint and Officer Brunson's body camera footage.

One day, someone called the Elba Police Department to express concern for Edgar because he was walking unsteadily on the street. Officer Brunson responded to the call, and Edgar explained that he had ataxia—a neurological disorder that affects a person's balance and ability to speak clearly. Officer Brunson drove Edgar to his destination without incident.

Six days later, officers responded to a call for assistance where they found Edgar in the street wrapped with a blanket. He told the officers that he needed help, that he was extremely sick, and that he believed that he had COVID-19. Edgar also told the officers that he had ataxia. Although Edgar changed his mind and wanted to return home, the officers insisted that he go to the hospital.

Edgar refused to go to the hospital and staggered away from the officers, as shown on Officer Brunson's bodycam footage. Edgar then sat down on someone's porch, and Officer Brunson offered him three choices: go to the hospital, go home, or go to jail. Edgar then stood up, left the porch, stumbled away from the officers, and eventually fell into another person's yard. One of the house's occupants told Officer Brunson that Edgar "can go his *** to jail!"

Officer Brunson's bodycam footage shows a long back-and-forth exchange as he pleaded with Edgar to accept medical care and go to the hospital, and Edgar continuously refused and uttered some incoherent statements. Eventually, two officers lifted Edgar to his feet. Officer Brunson tried to put Edgar's hands behind his back, and Edgar fell forward.

The officers then held Edgar down and attempted to handcuff him. One officer told another to use his taser on Edgar, and he did, at least four times. Edgar continually refused to place his right hand behind his back. Eventually, the officers handcuffed Edgar and took him to jail. Officer Brunson's bodycam footage shows the

jail staff taking custody of Edgar while Officer Brunson filled out an intake form.

Edgar alleges that at some point between his encounter with the officers and his release from jail five days later, he suffered a fractured ankle. He alleges that he asked for medical aid on his way to jail and that request was denied. Edgar alleges that he was diagnosed with an ankle fracture after his release from jail.

Edgar sued the officers, the City of Elba, and seven fictitious defendants. He asserted claims of false arrest, excessive force, and denial of medical care under 42 U.S.C. section 1983. He also asserted state law claims against the defendants. The defendants moved to dismiss the amended complaint and attached the police report and Officer Brunson's bodycam footage to their motion. The district court dismissed Edgar's federal claims with prejudice, and it dismissed Edgar's state law claims without prejudice. Edgar appealed.

## II.

"A few different standards of review govern this appeal." *Shuford v. Fid. Nat. Prop. & Cas. Ins. Co.*, 508 F.3d 1337, 1341 (11th Cir. 2007). First, "[t]his court reviews de novo a district court's order of dismissal, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Mesa Valderrama v. United States*, 417 F.3d 1189, 1194 (11th Cir. 2005). Along with the complaint, "[w]hen a district court, within its discretion, has properly considered materials outside the pleadings as part of its review of the operative complaint, we may consider

those same extrinsic materials on appeal." *Jackson v. City of Atlanta*, 97 F.4th 1343, 1350 (11th Cir. 2024). We review a district court's decision to consider materials outside the pleadings for abuse of discretion. *See id.*

Here, those materials include video footage. "When we review video footage at the motion to dismiss stage, we 'must construe all ambiguities in the video footage in favor of the plaintiff.'" *Id.* (quoting *Baker v. City of Madison*, 67 F.4th 1268, 1277 (11th Cir. 2023)). "[W]here [the] video is clear and obviously contradicts the plaintiff's alleged facts, we accept the video's depiction instead of the complaint's account, and [we] view the facts in the light depicted by the video." *Id.* (quoting *Baker*, 67 F.4th at 1277–78).

Next, "[w]e review the denial of a motion for leave to conduct limited discovery under Rule 56(f) for abuse of discretion." *Shuford*, 508 F.3d at 1341.

And "[g]enerally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the 'complaint fails to allege the violation of a clearly established constitutional right.'" *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002)). "This is a question of law that is reviewed 'de novo, accepting the facts alleged in the complaint as true and drawing all reasonable inferences in the plaintiff's favor.'" *Id.* (quoting *St. George*, 285 F.3d at 1337).

### III.

Edgar argues that the district court erred in four respects. First, he says the district court erred in how it assessed the material that the defendants submitted with their motion to dismiss. Second, he argues that the officers are not entitled to qualified immunity on his false-arrest and excessive-force claims. Third, he says that he should have been allowed to conduct discovery to identify fictitious defendants. Fourth, he argues that the district court erred in concluding that the officers did not deny him medical care. We address each argument in turn.

### A.

We will start with the district court's assessment of the material that the defendants' submitted with their motion to dismiss. Edgar argues that the district court should not have considered the police report, the taser-activity download, and Officer Brunson's declaration. Although Edgar concedes that it was proper for the district court to consider the video of his encounter with the officers, he argues that the district court misconstrued the video. We disagree.

First, we cannot say the district court committed reversible error by considering the written material. The district court did not consider the taser-activity download, which the defendants withdrew, or Officer Brunson's declaration, which the district court expressly declined to consider. As to the police report, which Edgar cites twice in his complaint, the district court relied on the report

only to support the alleged facts that Edgar pleaded in his amended complaint, not to contradict them. So even if we assume there were an error in considering the report, that error was harmless. *See United States v. Mar. Life Caribbean Ltd.*, 913 F.3d 1027, 1033 (11th Cir. 2019).

Second, Edgar contends that the district court erroneously failed to view the bodycam footage in the light most favorable to him. Specifically, Edgar objects to two statements in the district court's opinion, which he contends are inaccurate. The district court concluded that "the video depicts Edgar stumbling, falling over, speaking in an incoherent manner while entering three separate private properties, and shouting some indiscernible words and throwing his blanket over his head upon his final fall before the officers attempted to handcuff him." Edgar does not identify or explain how the district court misconstrued any alleged ambiguity in the footage. And on review of the footage, we believe the district court's statement is an accurate summation of Officer Brunson's bodycam footage.

The same is true for the second statement that Edgar challenges regarding the video. The district court said that although Edgar "allege[d] that *he asked* the officers to take him to the hospital several times before his arrest, . . . the video depicts Edgar *refusing* to go in the ambulance during the entire encounter leading up to his arrest." Again, Officer Brunson's bodycam footage supports the district court's statement, and the district court did not construe any ambiguity in the video against Edgar.

*B.*

We next address Edgar's argument that the officers are not entitled to qualified immunity on his claims of false arrest and excessive force. Government officials are entitled to qualified immunity for their actions in performing discretionary functions unless the plaintiff can establish "(1) that the defendant violated her constitutional rights, and (2) that, at the time of the violation, those rights were clearly established in light of the specific context of the case, not as a broad general proposition." *Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017) (cleaned up). It is undisputed that the officers were acting within their discretionary authority as it relates to the claims here.

We begin with Edgar's claim of false arrest. "An officer violates a person's Fourth Amendment right against unreasonable seizures if the officer arrests that person without probable cause to make the arrest." *Garcia v. Casey*, 75 F.4th 1176, 1186 (11th Cir. 2023). "But to establish the defense of qualified immunity for a false arrest claim, we have held that 'an officer need not have actual probable cause, but only "arguable" probable cause.'" *Id.* (quoting *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010)). And "[a]n officer has arguable probable cause if 'a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests.'" *Id.* at 1187 (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 68 (2018)).

Moreover, "[u]nder the 'any-crime rule' an officer is 'insulate[d] from false-arrest claims so long as probable cause existed to

arrest the suspect for some crime, even if it was not the crime the officer thought or said had occurred.'" *Id.* (quoting *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020)). When we apply the any-crime rule "to qualified immunity, an officer is entitled to qualified immunity if he had arguable probable cause to arrest a suspect for any crime, even if that crime was not 'the offense announced by the officer at the time of the arrest.'" *Id.* (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1195–96 (11th Cir. 2002)).

Edgar "bears the burden of proving both that the defendant violated his constitutional right and that 'the right was clearly established at the time of the violation.'" *Washington v. Howard*, 25 F.4th 891, 898 (11th Cir. 2022) (quoting *Barnes v. Zaccari*, 669 F.3d 1295, 1303 (11th Cir. 2012)). He argues that the district court erred when it held that the "[d]efendants collectively had sufficient facts to establish actual probable cause for public intoxication." Edgar contends that his "disability, ataxia, causes clumsy, involuntary movements, and negatively affects a sufferer's ability to speak, and these effects can resemble intoxication." According to Edgar, the officers knew that he suffered from ataxia due to their previous encounter, and therefore they could not have reasonably believed that he was intoxicated.

The defendants argue that the district court correctly concluded that the officers had probable cause to arrest Edgar for public intoxication—as well as a handful of other crimes under the any-crime rule. For example, the defendants say that Edgar could reasonably have been arrested for trespassing on private property. *See*

Ala. Code § 13A-7-4(a) ("A person is guilty of criminal trespass in the third degree when he knowingly enters or remains unlawfully in or upon premises.").

We believe that, at the very least, the officers had arguable probable cause to arrest Edgar for public intoxication. Under Alabama law, "[a] person commits the crime of public intoxication if he appears in a public place under the influence of alcohol, narcotics or other drug to the degree that he endangers himself or another person or property, or by boisterous and offensive conduct annoys another person in his vicinity." Ala. Code § 13A-11-10. Officer Brunson's bodycam footage showed "Edgar stumbling, falling over, speaking in an incoherent manner while entering three separate private properties, and shouting some indiscernible words and throwing his blanket over his head upon his final fall before the officers attempted to handcuff him." Although Edgar argues that his medical condition, not intoxication, caused him to act this way, he admits that his ataxia condition "causes difficulty with walking, balancing, hand coordination and speech that looks similar to intoxication." And even though Edgar's ataxia could have caused those behaviors, his condition does not rule out the possibility that he was also under the influence of drugs or alcohol. Based on our review of the video, it was reasonable for the officers to conclude that Edgar was publicly intoxicated to the degree that he was a danger to himself or others.

We likewise agree with the district court's conclusion that the officers were entitled to qualified immunity on Edgar's

24-10412              Opinion of the Court              11

excessive-force claim. The district court held that Edgar's Fourth Amendment excessive-force claim was subsumed by his false arrest claim. Edgar argued to the district court that the officers lacked probable cause to arrest him, and therefore, any force used against him was excessive. And "[w]hen, like here, an excessive force claim 'is predicated solely on allegations the arresting officer lacked the power to make an arrest, the excessive force claim is entirely derivative of, and is subsumed within, the unlawful arrest claim.'" *Khoury v. Miami-Dade Cnty. Sch. Bd.*, 4 F.4th 1118, 1130 (11th Cir. 2021) (quoting *Bashir v. Rockdale County*, 445 F.3d 1323, 1332 (11th Cir. 2006)).

Edgar argues for the first time on appeal that, even if the officers had probable cause to arrest him, their use of force was excessive. We ordinarily do not consider arguments that parties offer for the first time on appeal. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004). And in any event, Edgar fails to explain how the officers' actions violated any clearly established constitutional right in using a taser to effect the lawful arrest of a resisting suspect. *See, e.g.*, *Charles v. Johnson*, 18 F.4th 686, 701 (11th Cir. 2021) (holding that use of taser against suspect resisting arrest did not violate clearly established law); *Hoyt v. Cooks*, 672 F.3d 972, 980 (11th Cir. 2012) (same).

## C.

Third, Edgar argues that the district court erred by denying him the opportunity to conduct limited discovery to identify unknown officers who the amended complaint named as fictitious-

party defendants. The district court denied Edgar's request for discovery on two grounds: (1) because the amended complaint did not sufficiently identify the fictitious parties and (2) because Edgar improperly requested discovery in his brief opposing the defendants' motion to dismiss instead of filing a motion.

In his initial brief, Edgar challenges only the first rationale for the district court's holding. On reply, he argues for the first time that he did not need to file a motion for discovery instead of requesting it in his brief opposing the motion to dismiss. "As we repeatedly have admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'" *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) (quoting *United States v. Coy*, 19 F.3d 629, 632 n.7 (11th Cir. 1994)). And in any event, the district court correctly applied Federal Rule of Civil Procedure 7(b)(1), which states that "[a] request for a court order must be made by motion." Edgar's opposition to the defendants' motion to dismiss was not itself a motion.

### D.

Last, Edgar contends that the district court erred in dismissing his denial-of-medical-care claim against the named defendants—the officers who arrested him. In this context, Edgar's denial-of-medical-care claim is treated as a deliberate-indifference claim under the Fourteenth Amendment. *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007). "A deliberate-indifference claim entails both an objective and a subjective component." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020). The

objective component requires the plaintiff to allege "'an objectively serious medical need'—that is, 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention'—that, 'if left unattended, poses a substantial risk of serious harm.'" *Id.* (quoting *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)). The subjective component requires the plaintiff to allege that "the defendant acted with 'subjective recklessness as used in the criminal law,' and to do so he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff." *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (en banc) (quoting *Farmer v. Brennan*, 511 U.S. 825, 839 (1994) (citation omitted)). But "even if the defendant 'actually knew of a substantial risk to inmate health or safety,' he 'cannot be found liable . . .' if he 'responded reasonably to the risk.'" *Id.* (quoting *Farmer*, 511 U.S. at 844–45).

We agree with the district court's conclusion that Edgar's complaint fails to plausibly allege facts to establish a claim of deliberate indifference against the named defendants who arrested him. To be sure, we have recognized that it violates the constitution to delay medical care for a broken foot. *Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir. 1990). But Edgar never alleged that the defendant officers were deliberately indifferent to his fractured ankle; he alleged only that they were aware of "an injury to his foot" and that he told certain unidentified officers about the "injury and asked for medical treatment." Those allegations fail to establish a plausible claim for relief against the named defendants. Edgar does

not allege that the named officers had anything to do with the medical care that he did (or did not) receive for his ankle injury after he was booked into the jail shortly after his arrest. The officers offered Edgar the opportunity to accept medical care at the scene of the arrest, which he refused, and then they took him to jail where his care was transferred to others.

## IV.

We **AFFIRM** the district court.